GASKINS, J.
11 These consolidated appeals involve a dispute between the same health care provider and two different employers concerning underpayment of workers’ compensation benefits. The health care provider asserts that it was reimbursed at a rate below the Louisiana workers’ compensation medical reimbursement schedule because of preferred provider organization (“PPO”) network agreements. The workers’ compensation judge (“WCJ”) ruled in favor of the health care provider in both cases; he also awarded penalties and attorney fees against the employers. The employer in No. 45,629-WCA appealed. The health care provider appealed in both cases, contending that the attorney fees awarded by the WCJ were abusively low; it also answered the appeal in No. 45,629-WCA, seeking additional attorney fees for defending the judgment in that case. For the reasons set forth below, we affirm the judgment in No. 45,628-WCA. As to the judgment in No. 45,629-WCA, we affirm the WCJ’s ruling on the merits; however, we reverse the portion of the judgment awarding penalties and attorney fees.
FACTS
Musculoskeletal Institute of Louisiana, A.P.M.C. (“Musculoskeletal”), is a group of physicians who specialize in the areas of orthopedics, neurosurgery and pain management. It rendered necessary and reasonable medical treatment, which was approved by their employers, to two employees who were injured in the course and scope of their respective employments. Al Pertuz (No. 45,628-WCA) was an employee of McDonald’s Corporation who was injured in December 2006. Carl Peacock (No. 45,629-WCA) was an employee of Rollins, Inc.; he was injured in 12September 2005. Both employers were self-insured for workers’ compensation and used a third-party administrator, Gallagher Bassett, Inc., to administer the workers’ compensation claims. In both cases, Musculoskeletal was reimbursed at a rate below the reimbursement schedule. The charges were first reduced to the allowed amount under the reimbursement schedule, then reduced another 10 percent through the use of a PPO contract that Musculoskeletal had had with First Health Group Corporation.
*362 In August 2008, Musculoskeletal filed disputed claims for compensation -with the Office of Workers’ Compensation (“OWC”) in both cases. It asserted underpayment/late payment of medical bills and sought penalties and attorney fees for arbitrary and capricious handling of the claim. McDonald’s filed an answer and several exceptions (including one to subject matter jurisdiction); it also asserted affirmative defenses. Rollins also filed an answer and several exceptions. In February 2009, Rollins’ exceptions of no cause of action and prescription were denied.
The two cases were tried together in September 2009. Testimony was given by Lee McClendon, the former chief executive officer of Musculoskeletal, as to the company’s billing procedures for patients. He explained the difference in the handling of workers’ compensation patients and regular group health patients. In particular, he addressed the complexity of the bureaucratic procedures for obtaining approval to treat workers’ compensation patients. He stated that while a regular group health patient presents an identification card, Musculoskeletal has never received |ssuch a card in any workers’ compensation setting. Additionally, he testified that they have never received a written notice in a workers’ compensation setting prior to treating an injured worker stating that their charges will be discounted through some kind of network. According to McClendon, Musculoskeletal’s charges are above the fee schedule.
McClendon also testified that Musculo-skeletal had a contract with First Health PPO but that it was cancelled several years ago; First Health wanted to pay a reimbursement that was inadequate given the workload. However, Musculoskeletal still receives payments reflecting that the payor had applied discounts pursuant to the First Health PPO. He admitted that at one time Musculoskeletal had entered into an agreement with Willis-Knighton physician hospital organization (“PHO”), that Willis-Knighton PHO contracted with First Health, and that Musculoskeletal was bound to the terms of the PHO. However, he also testified that when Musculoskeletal entered into a direct contract with First Health in 2002, it replaced Musculoskele-tal’s participation in the contract that First Health had with the Willis-Knighton PHO.
Among other evidence admitted were deposition excerpts from Emil Bravo of Gallagher Bassett, the third-party administrator for both employers. He testified that ID cards were not issued for workers’ compensation; also, they did not issue any written notice containing the PPO networks on it to the providers in lieu of a card.
On December 8, 2009, the WCJ signed written judgments with reasons in which he ruled in favor of Musculoskeletal in both cases. The |4WCJ found that Muscu-loskeletal’s claims against the employers were based solely on its obligation to Mus-culoskeletal under the Louisiana Workers’ Compensation Act (“LWCA”). Under La. R.S. 23:1208, the employer was required to reimburse Musculoskeletal the lesser of its billed charges or the amount set forth in the reimbursement schedule. However, Musculoskeletal’s charges were improperly reduced a second time through the use of the PPO contract that Musculoskeletal had with Health Group Corporation and that this discounting was in violation of La. R.S. 28:1033. The WCJ further found that the employers failed to provide the statutorily required notice under La. R.S. 40:2203.1 (the Louisiana Preferred Provider Organization Act or PPOA) to Musculo-skeletal and that failure made their use of a PPO contract discount that Musculoskel-etal had entered into with First Health unenforceable by the employers.
*363 In the Pertuz case, the WCJ awarded reimbursement of the underpaid charges in the amount of $40.60, with legal interest from the date the underpayments were due. Concluding that McDonald’s failed to make an adequate and reasonable investigation of Musculoskeletal’s disputed claim for compensation benefits, the WCJ awarded a statutory penalty of $2,000 and attorney fees of $1,500. Likewise, in the Peacock case, the WCJ awarded $31.60 in underpaid charges, with legal interest from the date the underpayments were due, as well as a statutory penalty of $2,000 and attorney fees of $1,500 against Rollins. Costs were assessed against the employers.
| Jn No. 45,628-WCA, McDonald’s did not appeal the WCJ’s ruling. However, Musculoskeletal appealed, asserting that the award of attorney fees was abusively low.
In No. 45,629-WCA, Rollins appealed suspensively from the WCJ’s ruling. Mus-culoskeletal appealed devolutively, contending that the attorney fees awarded by the WCJ were abusively low. Additionally, Musculoskeletal answered the appeal, seeking additional attorney fees for defending the judgment against Rollins’ appeal.
VALIDITY OF PPO DISCOUNT
AGREEMENTS
Rollins argues that the WCJ incorrectly held that the LWCA does not allow contracting or discounting below the reimbursement schedule. Since various statutes provide for the maximum reimbursement, it contends that it must be permissible for the parties to agree to a lesser reimbursement rate. Musculoskel-etal, on the other hand, maintains that the PPO discounts taken by Rollins were not authorized under and/or were expressly prohibited by the LWCA.

Statutory law

La. R.S. 23:1038 provides:
No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.
La. R.S. 23:1034.2 states, in relevant part:
(D) Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers’ compensation insurer.
(E) Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies |fithat is less than the reimbursement established by the reimbursement schedule.
La. R.S. 23:1203(B) states:
The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.
LAC 40:I.5101(B) provides:
The law provides that an employer or compensation insurer owes to an injured worker one hundred percent (100%) of the medical fees incurred in the treatment of work-related injuries or occupa *364 tional diseases (hereinafter referred to as “illness(es)”).

Jurisprudence

While the issue presented in the instant case is res nova in this circuit, other appellate courts in this state have already been confronted with it. In particular, our brethren of the third circuit have grappled in several cases with the application of PPO discounts in workers’ compensation settings. Their efforts have culminated in the recent case of Central Louisiana Ambulatory Surgical Center, Inc. v. Payless Shoesource, Inc., 2010-86 (La.App. 3d Cir.7/28/10), 2010 WL 3026527, which addressed many of the same assignments of error presented in the instant case.
In Payless Shoesource, supra, the third circuit also was called upon to determine whether PPO discounts were authorized by the LWCA. There the WCJ had concluded that they were not; the appellate court agreed. It found that sections such as La. R.S. 23:1033 and 23:1203(B), as well as the 17LWCA as a whole, prohibited any contracts that would operate to relieve an employer of liability created by the LWCA. In so concluding, the court stated:
The LWCA is highly regulated.... Almost every conceivable scenario is addressed in the scheme of the LWCA. If the Legislature intended for PPO contracts to fall into the scheme of workers’ compensation, it would have addressed them in the Act. Instead, the Act specifically prohibits manipulation of its mandatory provisions. The Employers’ attempt to do so through PPO contracts, is, therefore, impermissible.
The court went on to further find that the employers’ use of the PPO contracts violated the social legislative purpose of the LWCA:
Not only do the PPO contracts purport to limit the employer’s liability for medical care, but they also threaten the foundation of the workers’ compensation system-namely, providing quality medical care to injured workers. When medical providers are forced to accept less reimbursement for the same quality of care they provide to paying patients, it is likely that they will be reluctant to participate in the workers’ compensation program. That reluctance will then lead to a fewer number of providers accepting workers’ compensation patients, and consequently, substandard care. We cannot allow the workers’ compensation system to be compromised in such a way.
We concur with the third circuit’s conclusion that the employer’s use of the PPO contracts to additionally lower the reimbursement violates the spirit and intent of the LWCA. As to Rollins’ argument that the statutory language setting a maximum rate of reimbursement suggests that a lesser rate is permissible, we note that Musculoskeletal did not charge rates less than those set forth in the reimbursement schedule.
We find no error in the ruling of the WCJ that application of the PPO contracts violated La. R.S. 23:1033 and 23:1203.
J^NOTICE UNDER
LA. R.S. 40:2203.1
Rollins also contends that the WCJ erred in finding that it failed to provide notice under La. R.S. 40:2203.1 of the PPOA for several reasons. First, it claims that the WCJ lacked subject matter jurisdiction to hear the notice argument. Second, Rollins asserts that the notice requirement was inapplicable to it.

Subject matter jurisdiction

The instant suit involves a health care provider seeking proper reimbursement *365 for services rendered to an injured employee when the employer has allegedly underpaid for those services. Such a matter is properly before the OWC. Beutler England Chiropractic Clinic v. Mermentau Rice, Inc., 2005-942 (La.App. 3d Cir.5/31/06), 931 So.2d 553. In response, the employer raised a defense involving a PPO contract. In litigating the employer’s asserted defense, the health care provider asserted noncompliance with a statute governing all PPO agreements in this state. To find merit in this assignment of error, we would have to find that the employer may successfully defeat subject matter jurisdiction in an action properly brought before the OWC through its choice of defenses. That we cannot do. The main demand controls subject matter jurisdiction. See Dixon v. Zemurray, 227 La. 457, 79 So.2d 738 (1955); Succession of Solari, 218 La. 671, 50 So.2d 801 (1951).
| ¡yApplication of notice provision
In pertinent part, La. R.S. 40:2203.1 states:
A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part. The provisions of this Section shall not apply to a group purchaser when providing health benefits through its own network or direct provider agreements or to such agreements of a group purchaser.
B. A preferred provider organization’s alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser’s contractual agreement or agreements and presented to the participating provider when medical care is provided. When more than one preferred provider organization is shown on the benefit card of a group purchaser or other entity, the applicable contractual agreement that shall be binding on a provider shall be determined as follows:
[[Image here]]
(5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser’s contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreement or agreements. [Emphasis added.]
In Payless Shoesource, supra, the third circuit addressed the identical notice issue. It held that the specific notice provisions of La. R.S. 40:2203.1 apply to workers’ compensation patients in a PPO network. In support of this decision, it cited Gunderson v. F.A. Richard & Associates, 2009-1498 (La.App. 3d Cir.6/30/10), 2010 WL 2594287. In the Gunderson case, a PPO claimed that the notice provisions of La. R.S. 40:2203.1 did not apply to workers’ compensation patients, asserting that the legislative history and the language of the act show that the notice provisions apply only to group |10health plan participants. However, the court held that “when La. R.S. 40:2203.1 states that it applies to ‘all preferred provider organization agreements that are applicable to medical services rendered in this state and to group purchasers as defined in this Part,’ it in fact, means all such agreements.”
It is undisputed that there was no benefit card in the instant case. Nor — according to the testimony of a representative of Rollins’ third-party administrator — was 30-days’ written notice given as required *366 by La. R.S. 40:2203.1(B)(5). Like the third circuit in Payless Shoesource, supra, we hold that the specific notice provision of La. R.S. 40:2203.1 applies to workers’ compensation patients in a PPO network.
Accordingly, we find no error in the ruling of the WCJ that Rollins failed to provide the statutorily required notice under La. R.S. 40:2203.1 to Musculoskeletal and that that failure caused its use of the PPO contract discount to be unenforceable even if the PPO contract discount had been permissible.
PENALTIES AND
ATTORNEY FEES

Prescription

Rollins contends that the claims for penalties and attorney fees had prescribed pursuant to the one-year prescriptive period set forth for delictual actions in La. C.C. art. 3492. In support of this argument, it cites Craig v. Bantek West, Inc., 2003-2757 (La.App. 1st Cir.9/17/04), 885 So.2d 1234, writ denied, 2004-2995 (La.3/18/05), 896 So.2d 1004, and Seidl v. Zatarain’s, Inc., 05-780 (La.App. 5th Cir.3/28/06), 927 So.2d 557. |n However, these cases are readily distinguishable from the instant case because they do not involve statutory penalties and attorney fees owed to a health care provider under La. R.S. 23:1201(F)(4). Instead, they address benefits owed to claimants. Payless Shoesource, supra.
We look to La. R.S. 23:1201(F), which sets forth in relevant part:
(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.
According to the statute, the health care provider’s claims for penalties and attorney fees are separate and distinct from those of the injured employee and do not accrue until the health care provider’s underlying claim for payment is adjudicated. Because the health care provider cannot seek an award of statutory penalties and attorney fees from a defendant employer/insurer until the health care provider prevails on his claim for payment of his fee, that cause of action has not yet accrued at the time of trial. Payless Shoe-source, supra. Furthermore, when claims for penalties and attorney fees accompany the claims for benefits, if the underlying claims have not prescribed, neither have the claims for attorney fees and penalties. Rave v. Wampold Companies, 2006-978 (La.App. 3d Cir.12/6/06), 944 So.2d 847. Rollins does not allege that the underlying claim for reimbursement due to underpayment had prescribed. Accordingly, we find that Musculoskeletal’s claims for penalties and attorney fees had not prescribed.

11^Reasonable controversion of claims of underpayment

Next Rollins argues that the award of penalties and attorney fees should be reversed because it reasonably controverted the claims of underpayment at issue here. We find merit in this assignment of error.
In pertinent part, La. R.S. 23:1201 states as follows:
F. Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty ... together with reasonable attorney fees for each disputed claim.... Penalties shall be assessed in the following manner:
[[Image here]]
*367 (2) This Subsection shall not apply if the claim is reasonably controverted....
In the Payless Shoesource case, the third circuit reversed the award of penalties and attorney fees because the existence of the PPO contracts, though found to be invalid, provided an articulable basis for the employers to pay the additionally discounted amounts, at the time the employers took action. Accordingly, the court found that the matter had been reasonably controverted. The issue presented herein concerning the application of PPO contracts to workers’ compensation underpayment claims are res nova in this circuit. It is a novel issue, and there are compelling arguments to be made on each side. We find that Rollins reasonably controverted Mus-culoskeletal’s claim in the instant case. Accordingly, we reverse the award of penalties and attorney fees made in No. 45,-629.
In No. 45,628-WCA, Musculoskele-tal appealed seeking an increase in the award of attorney fees made in its favor. McDonald neither appealed nor answered the appeal; therefore, we can grant no relief from the | ^judgment rendered against it.[1] However, we decline to award additional attorney fees.
CONCLUSION
The judgment in No. 45,628-WCA is affirmed.
As to the judgment in No. 45,629-WCA, we affirm the WCJ’s ruling on the merits; however, the portion of the judgment awarding penalties and attorney fees is reversed.
Costs of these appeals are assessed equally between Musculoskeletal and Rollins.
JUDGMENT IN No. 45,628-WCA AFFIRMED.
JUDGMENT IN No. 45,629-WCA AFFIRMED ON THE MERITS; AWARD OF PENALTIES AND ATTORNEY FEES REVERSED.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.

. When an appellee fails to appeal from a judgment or fails to answer the appellant’s appeal, those portions of the judgment adverse to appellee become final and cannot be considered on appeal. Mertens v. Mertens, 308 So.2d 506 (La.App. 3d Cir.1975), writ denied, 313 So.2d240 (La.1975).