CIACCIO, J.
 
 *
 

 | jThis case involves an alleged underpayment of workers’ compensation benefits from the employer to the treating health care provider. The Louisiana Workers’ Compensation Act (“LWCA”) provides a reimbursement schedule, which sets forth maximum charges for medical treatment to workers’ compensation patients. In this case, the payments to the health care provider were discounted below the reimbursement schedule pursuant to a preferred provider organization contract (“PPO”). We granted certiorari in this case to determine whether PPO discounted reimbursement payments to health care providers in amounts below those set forth in the LWCA’s reimbursement schedule run afoul of the LWCA. For the reasons set forth below, we find the payment to a health care provider in an amount below the LWCA reimbursement schedule for workers’ compensation services pursuant to a valid PPO contract does not violate Louisiana law. Thus, the judgment of the court of appeal is reversed.
 

 FACTS & PROCEDURAL HISTORY
 

 Agilus Health executed a PPO contract with First Health in June 2004. Pursuant to this contract, Agilus joined a network of providers and payors into the network. The contract stated, “[Agilus] understand[s] and agree[s] that First Health |2will offer to certain Payors the opportunity to contract with First Health to utilize the services of the health care providers.... ” In exchange for the benefits of being in the network and receiving the benefits of “steerage” and “more patients,” Agilus agreed to accept discounted rates from payors into the network for certain services. Concerning workers’ compensation reimbursement, the contract stated:
 

 D. Reimbursement from Workers Compensation Payors for services rendered to occupationally ill/injured employees shall be as follows:
 

 (1) If any state law or regulation establishes rules or guidelines for the payment of health care services, reimbursement shall not exceed 85% of the maximum amount payable under such rules or guidelines.
 
 [1]
 

 As a member of the First Health network, Agilus agreed to receive lower rates from payors into the network for a number of different services. Liberty Mutual Insurance Company was one of the many payors into the First Health network.
 

 
 *71
 
 Allison Taylor was employed by Accor Lodging North America (“Accor”), and suffered an injury in the course and scope of her employment on June 14, 2007. She was referred to and treated by Agilus Health for her injuries.
 
 [2]
 
 Agilus submitted its bills to Liberty Mutual, Accor’s workers’ compensation insurer, for Taylor’s treatment. Agilus claims it charged Liberty Mutual and Accor Lodging $1,158.00 for the services rendered to Taylor with the maximum reimbursement under the LWCA reimbursement schedule being $906.00. Agilus claims it expected to be paid this amount. However, because Agi-lus belonged to the First Health network and Liberty Mutual was a payor in the network, Liberty Mutual paid the bill timely in the amount of $724.80, which was 80% of the LWCA reimbursement schedule. Liberty Mutual Lpaid this amount pursuant to the PPO agreement, which set forth the amount of reimbursement for workers’ compensation services for payors into the network at 80% of the state’s reimbursement schedule. Agilus then filed suit against Liberty Mutual and Accor seeking recovery of the alleged underpayment in the amount of the difference between the amount in the reimbursement schedule and the 80% paid ($181.20) plus penalties, attorney fees, and legal interest.
 

 Following a hearing, the Office of Workers’ Compensation (“OWC”) hearing officer ruled in favor of the plaintiff, Agilus Health, finding the PPO contract violated provisions of the LWCA. The hearing officer found in his oral reasons for judgment that PPO agreements are limited and confined to operation within the general health arena and do not apply in the area of workers’ compensation. The court awarded Agilus Health the underpayment of $181.20, a $2,000 penalty, $4,000 in attorney fees, plus legal interest. Both Liberty Mutual and Accor appealed the Workers’ Compensation Court’s ruling.
 

 The Third Circuit Court of Appeal, in a split opinion, affirmed the lower court’s ruling.
 
 Agilus Health v. Accor Lodging North America,
 
 09-1049 (La.App. 3 Cir. 3/10/10) 32 So.3d 1120. Accor and Liberty Mutual argued the PPO agreement was not a violation of the LWCA because La. R.S. 23:1034.2(E) allows a provider to charge a fee that is less than that established by the reimbursement schedule. However, the court reasoned that 1034.2(E) “does not allow the employer to pay less than the scheduled amount if the provider charges that amount or more.”
 
 Agilus,
 
 32 So.3d at 1121. The court of appeal cited La. R.S. 23:1203(B), which states:
 

 The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually |4published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.
 

 The opinion also cited La. R.S. 23:1033, which provides, “no contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.” The court also cited a portion of Judge Peter’s con
 
 *72
 
 currence in
 
 Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.,
 
 05-942 (La.App. 8 Cir. 5/31/06) 931 So.2d 553, 561, which stated:
 

 [T]o the extent that the PPO contract purports to further limit the employer’s liability for medical care, it runs afoul of La.R.S. 23:1033 and may not serve as a basis to reduce the amount owed to Beutler England for the treatment of [the injured employee]. Because the PPO contract may not serve as a basis to reduce the amount owed for the treatment of [the injured employee], Beutler England’s claim is properly before the OWC pursuant to La.R.S. 23:1034.2(F)(1) as a garden-variety medical expense claim. Whatever remaining rights the defendants have vis-a-vis the PPO, in light of the Workers’ Compensation Act’s express disallowal of contracts in contravention of its provisions, is another issue for another forum.
 

 Accordingly, the court of appeal found no error in the decision of the OWC hearing officer ruling finding the PPO contract provisions related to workers’ compensation violated the LWCA. The court also affirmed the award of penalties and attorney fees finding the defendants violated a statutorily mandated payment schedule and did not reasonably controvert the plaintiffs claim.
 
 Agilus,
 
 32 So.3d at 1122.
 

 Judge Amy dissented from the majority opinion and assigned written reasons. Judge Amy would have reversed the lower court’s ruling.
 
 Id.
 
 at 1123 (Amy, J. dissenting). Judge Amy opined that the plaintiff in this case confused an employer’s liability to the employee with an employer’s obligation to a health care provider.
 
 Id.
 
 | ⅞Judge Amy reiterated that La. R.S. 23:1033 states, “No contract ... shall operate to relieve the employer ... from any liability created by this Chapter
 
 except as herein provided”
 
 (emphasis added). Further, Judge Amy noted La. R.S. 23:1034.2(E) provides:
 

 Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is less than the reimbursement established by the reimbursement schedule.
 

 Judge Amy found the employer’s liability was satisfied upon paying the contractually agreed upon fee for workers’ compensation patient treatment.
 
 Id.
 
 The dissent quoted a number of provisions from the contract, specifically the “Payment in Full” Clause, which states, “Provider agrees to accept the reimbursement specified in Appendix A as payment in full for Covered Medical Services rendered to Participating Patients. In no case shall reimbursement exceed Provider’s billed charges.” Judge Amy also pointed out that the president of Agilus knew the contents of the contract and specifically knew Agilus was “agreeing some kind of way to take less than the fee schedule” from payors into the network.
 
 Id.
 
 at 1126. Judge Amy concluded La. R.S. 23:1034.2(E) permits these type of PPO contracts, and the judgment of the OWC hearing officer should be reversed.
 
 Id.
 
 Accor and Liberty Mutual applied for writs to this court arguing that the discount taken pursuant to the PPO agreement does not violate any provisions of the LWCA and should be found to be a valid and enforceable contract. We granted certiorari on June 18, 2010.
 
 Agilus Health v. Accor Lodging North America,
 
 10-800 (La.6/18/10), 38 So.3d 312.
 

 LAW AND DISCUSSION
 

 Agilus argues for the first time on appeal to this court that the defendants did not submit sufficient evidence to establish its affirmative defense under the contract. Particularly, Agilus now argues that defendants put forth no evidence that the contract 1 (¡was in force during 2007 when Taylor was treated. However, we find this argument without merit. Prior to the tri
 
 *73
 
 al, the plaintiff stipulated to the “authenticity of the contracts between Agilus Health, Inc. and First Health” and to the authenticity and receipt of “an amended appendix from First Health to Agilus.” Further, at the trial during the questioning of Oday Lavergne, Agilus’s corporate representative, Lavergne indicated his hospital canceled its membership in the First Health Network as of October or November of 2008, after the dates of services to Taylor. Now we turn to the issue of the PPO discount’s validity under Louisiana law.
 

 Louisiana Civil Code article 1971 states, “Parties are free to contract for any object that is lawful, possible, and determined, or determinable.” La. C.C. art. 1983 goes on to provide that “[cjontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.” Further, La. C.C. art. 1968 states, “The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy.” In this case, two sophisticated parties, Agilus and First Health, entered into a PPO Group Purchaser agreement.
 
 [3]
 

 | «Pursuant to the provisions of the agreement, Liberty Mutual as a “payor”
 
 *74
 
 into the network paid Taylor’s bills at the agreed upon 80% rate of the LWCA’s reimbursement schedule. Because the Civil Code establishes the freedom to contract on all matters not forbidden by law, the discount under the contract was valid unless it was forbidden under some provision of Louisiana Law or was against the public policy of the state.
 
 Travelers Ins. Co. v. Joseph,
 
 95-0200 (La.6/30/95), 656 So.2d 1000, 1004.
 
 See also
 
 La. C.C. art. 1968. This court must determine whether PPO discounts for workers’ compensation claims somehow run afoul of the LWCA, its provisions, and its purposes.
 

 Validity of the PPO’s Workers’ Compensation Discount Under the LWCA
 

 The LWCA establishes a compromise in which employees and employers surrender certain advantages in exchange for others which are more valuable to both the parties and to society in general. 13 S. Malone & H. Alston Johnson, III, Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice § 32, p. 35. “The employer gives up the immunity he otherwise would enjoy in cases where he is not at fault, and the employee surrenders his former right to full damages and accepts a more modest claim for bare essentials, represented by compensation.”
 
 \Jd.
 
 at 35-36. The LWCA also establishes a duty on employers to furnish all necessary medical and vocational rehabilitation expenses. La. R.S. 23:1203. The Act states, “In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal ...” La. R.S. 23:1203(A). Thus, employers have a duty to “furnish” all necessary medical care and treatment for the injured employee.
 

 The lower courts found and Agilus contends that the PPO agreement violates the express provisions of the LWCA. Specifically, Agilus submits the payment of an amount less than the LWCA reimbursement fee schedule when the health care provider has “charged” a greater amount violates the provisions of La. R.S. 23:1033, which states, “No contract, rule, regulation or device whatsoever shall operate to re
 
 *75
 
 lieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.” The court of appeal agreed with Agilus, stating, “this provision does not allow the employer to pay less than the scheduled amount if the provider charges that amount or more.”
 
 Agilus,
 
 32 So.3d at 1121. This argument is predicated on the meaning of the words “charge” and “reimbursement” in both the contract and the LWCA and the contention that La. R.S. 23:1203(B) commands the payment of either the “actual charge” listed on the bill or the reimbursement schedule amount. La. R.S. 23:1203(B) provides:
 

 The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.
 

 According to Agilus, if a lesser amount is paid than what La. R.S. 23:1203(B) | incommands, then the employer is somehow lessening his liability in violation of La. R.S. 23:1033.
 

 Conversely, Liberty Mutual and Accor argue the parties were free to contract for the discounted payment rates and there are no statutory provisions in the LWCA that operate to prohibit these PPO discounts. Liberty Mutual and Accor specifically cite La. R.S. 23:1034.2(E), which states “Nothing in the section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is less than the reimbursement established by the reimbursement schedule.”
 

 A number of different courts have addressed this issue. In
 
 Central Louisiana Ambulatory Surgical Center, Inc. v. Payless Shoesource, Inc.,
 
 the Third Circuit invalidated similar PPO discount provisions, holding that PPO discounts taken by employers for workers’ compensation reimbursement are not authorized by the LWCA. 10-86 (La.App. 3 Cir. 7/28/10) 46 So.3d 689. The court reasoned since the LWCA is so highly regulated, if the legislature intended PPO contracts to fit within the workers’ compensation scheme, they would have addressed PPO agreements in the Act.
 
 Id.
 
 at 695. The court further stated:
 

 the PPO contract by its very terms purports to reduce or relieve the employer’s liability for workers’ compensation medical payments from the full amount of the fee schedule to only eighty percent (80%) of the fee schedule. This contractual maneuver, however, flies in the face of the language and purpose of the Act.
 

 Id.
 
 at 695. Further, the court reasoned that the PPO contract discounts would erode the quality of care to injured workers by forcing more health care providers to accept fewer workers’ compensation patients.
 
 Id.
 
 Judge Gremillion dissented in part agreeing with the overall result the court reached but disagreeing that PPO discount agreements violated the LWCA. Judge Gremillion cited La. R.S. 23:1034.2(E), noting nothing in the act prevents a provider from charging less than the fee schedule, and vindicated:
 

 When a provider and an employer or workers’ compensation insurer enter into a PPO contract, they are agreeing that the provider will only charge a certain amount for specific care, services, and treatment procedures. The fact that they might charge a patient who is not a member of the PPO a greater amount than an employee member does
 
 *76
 
 not render the PPO agreement invalid under the Workers’ Compensation Act, nor does it render the employee’s care substandard.
 

 Id.
 
 at 699 (Gremillion, J. dissenting). Judge Gremillion did agree with the majority that the PPO failed to comply with the notice requirements of La. R.S. 40:2203.1, and thus, the court properly ruled that the discount was invalid.
 
 [4]
 
 Recently, the Second Circuit Court of Appeal concurred with the Third Circuit’s reasoning, finding application of the PPO discounts violate La. R.S 23:1033 and 23:1203(B).
 
 Musculoskeletal Institute of Louisiana, APMC v. McDonald’s Corp.,
 
 45,629 (La.App. 2 Cir. 9/22/10), 48 So.3d 359. In that case, the Second Circuit stated, “As to [defendant’s] argument that the statutory language setting a maximum rate of reimbursement suggests that a lesser rate is permissible, we note that Musculoskeletal did not charge rates less than those set forth in the reimbursement schedule.”
 
 Id.
 
 at 364. The court agreed with the Third Circuit that the LWCA prohibited any contracts that would operate to relieve an employer of liability created by the LWCA.
 
 Id.
 

 In a string of similar cases, the Federal District Court for the Western District of Louisiana came to the opposite conclusion and found the PPO agreements did not relieve the employer of any liability and were valid and enforceable contracts, citing La. R.S. 23:1034.2(E).
 
 See Liberty Mut. Ins. Co. v. Gunderson,
 
 No. 04-2405, 2006 WL 367700, at 4-5 (W.D.La. Feb.15, 2006) (Mem);
 
 Sentry Ins. v. Sw. La. Hosp. Ass’n,
 
 No. 06-570, 2007 WL 2572314, at 2-3 (W.D.La. Sep. 5, 2007) (Mem.);
 
 Am. Home Assur. Co. v. Shamieh,
 
 No. 06-519, 2007 WL 2572311, at 2-3 (W.D.La. Sep. 5, 2007);
 
 CCN Managed Care, Inc. v. Shamieh,
 
 No. 06-519, 2007 WL 2088302, at 12-13 (W.D.La. Jul. 20, 2007) (Mem.),
 
 aff'd in part,
 
 No. 09-30310, 2010 WL 1141634 (5th Cir. Mar. 18, 2010). Specifically, in
 
 Liberty Mut. Ins. Co. v. Gunderson,
 
 the court stated:
 

 In summary, the Court concludes that there are no prohibitions in the Louisiana Workers’ Compensation laws that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers.
 

 No. 04-2405, at 5 (W.D.La.2006) (Mem.).
 

 We now turn to the statutes and PPO contract provisions in question.
 

 1. La. R.S. 23:1203(B)
 

 La. R.S. 23:1203(B) reads:
 

 The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state,
 
 is limited
 
 to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or
 
 the actual charge
 
 made for the service, whichever is less.
 

 (Emphasis added). Agilus and the lower courts read La. R.S. 23:1203(B) as specifically requiring payment in the amount of the reimbursement schedule or the “actual charge,” while reading “actual charge” as
 
 *77
 
 the standard charge for the service listed on the bill, as discussed in the next section below. We disagree. La. R.S. 23:1208(B) only
 
 limits
 
 the obligation of the employer. It does not impose an affirmative duty on the employer to pay one amount or the other. It simply caps the employer’s monetary obligation to the health care provider. The employer’s obligation to pay for the medical care of the injured employee comes from La. R.S. 23:1203(A), which states, “... the employer
 
 shall
 
 furnish all necessary drugs, supplies, hospital care and | ^services, medical and surgical treatment. ...” (Emphasis added). La. R.S. 23:1203(B) only operates to limit the amount of the obligation established in La. R.S. 23:1203(A). Further, when read
 
 in pan materia
 
 with the rest of the LWCA, specifically La. R.S. 23:1034.2(E), which states, “Nothing in this Section shall prevent a health care provider from charging ... less than the [reimbursement schedule],” ⅜ is clear that nothing in the LWCA operates to invalidate an agreed upon discounted charge that is less than the reimbursement schedule. The meaning of a law is determined by considering the law in its entirety along with all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the legislature in enacting it.
 
 SWAT 24 Shreveport Bossier, Inc. v. Bond,
 
 2000-1695, (La.6/29/01); 808 So.2d 294, 302. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intention the legislature had in enacting it.
 
 Id.
 
 Courts should give effect to all parts of a statutory scheme, if possible, and should not adopt a statutory construction that makes any part superfluous or meaningless.
 
 Id.
 

 La. R.S. 23:1034.2(0(1) states, “The reimbursement schedule shall include
 
 charges
 
 limited to the mean of the usual and customary charges for such care, service, treatment, drugs, and supplies.” (emphasis added). Further, La. R.S. 23:1034.2(D) states, “Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or worker’s compensation insurer.” Finally, La. R.S. 23:1034.2(E) states, “Nothing in this section shall prevent a health care provider from charging a fee for such care, services, treatment drugs, or supplies that is less than the reimbursement established by the reimbursement schedule.” Read together, these statutes indicate the clear intent of the legislature to cap the employers liability for [ ^reimbursement and encourage health care providers to charge less than the amounts provided in the reimbursement schedule. “The object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.”
 
 First Nat’l Bank of Boston v. Beckwith Mach. Co.,
 
 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting
 
 Smith v. Flournoy,
 
 238 La. 432, 115 So.2d 809, 814 (1959)). It is clear from the statutes that the LWCA reimbursement schedule is comprised of the maximum allowable fees the provider is allowed to charge, and any amount above that is not recoverable. Because the statutes provide the maximum allowable charge for care to a workers’ compensation patient and provides that “nothing” in this section shall prevent a lesser charge, it is unreasonable to conclude that the statutes operate to prohibit a provider from contracting to accept less than the reimbursement schedule, especially when the provider was fully able to charge less than the schedule without the contract.
 

 
 *78
 

 2. What Constitutes the “Actual Charge
 
 ”
 

 As Judge Gremillion pointed out in his dissent in
 
 Payless Shoesource,
 
 “[w]hat constitutes the amount the provider charges is ... the critical issue.” 10-86 at 9 (Gremillion, J. dissenting). Agilus argues the employer’s liability to the injured employee to “furnish” all necessary medical expenses of the injured employee, is unlawfully relieved when the employer pays an amount less than what the LWCA commands, discussed in the section above. Agilus points to the PPO contract provision, which states the “[bjills shall show Provider’s “actual charges” for the services rendered.” Further, Agilus cites La. R.S. 23:1203(B), which provides, “The obligation of the employer ... is limited to the reimbursement ... under the | ^reimbursement schedule ... or
 
 the actual charge
 
 made for the service, whichever is less.” (Emphasis added). Thus, for purposes of La. R.S. 23:1203(B), Agilus submits that the “actual charge” is the standard charge required to be shown on the bill under the contract, not the reimbursement amount listed in the contract. According to Agilus, the employer must pay the standard charge for the services listed on the bill or the LWCA reimbursement schedule amount, whichever is lower. Thus, Agilus argues La. R.S. 23:1203(B)
 
 always
 
 requires payment of the reimbursement schedule amount if the provider’s standard charge is more than the schedule, regardless of any contract dealing with reimbursement. Agilus contends that a health care provider can charge any amount for services, and once reduced to the reimbursement schedule, the amount cannot be further reduced because it would serve to relieve the employer of liability in violation of La. R.S. 23:1033.
 

 We disagree. The PPO contract goes on to provide, “payor shall be liable for the lesser of provider’s billed charges or the amount set forth in Appendix A of this agreement ...” According to the contract in this instance, the payor is only responsible to pay the provider the lesser of the listed charge in the bill or the amount set forth in the appendix. As such, the lesser amount would become the charge,
 
 ie.
 
 the amount the payor is responsible to pay the provider. Therefore, while the PPO agreement mandates that the actual or standard charge for the services be listed on the bill, it requires only the payment of the lesser of that amount or the amount in the appendix. In this case, the amount listed in the appendix for reimbursement for workers’ compensation services is the lesser amount. Thus, it is the charge owed to the provider.
 

 Agilus’s reading of the contract and its mention of the terms “actual charge” and “reimbursement” ignores the fact that the LWCA does not meaningfully | ^distinguished the terms “charges” and “reimbursement.” According to the plain language of the statute, the reimbursement schedule is a listing of the maximum
 
 charges. See
 
 La. R.S. 23:1034.2(0(1). The LWCA uses the terms “fees”, “charges”, and “reimbursement” throughout referring to the amount to be paid to the provider.
 
 See
 
 La. R.S. 23:1034.2; La. R.S. 23:1203. We do not read the LWCA as distinguishing between an “actual charge” and what would be contractually owed to the provider in reimbursement. If a provider contracts to receive a certain amount of reimbursement for a service, we read this to be the “actual charge” contemplated by La. R.S. 23:1203(B), regardless of the standard charge or where it may be listed.
 

 We also note that no part of the employer’s liability to “furnish” adequate medical care to the injured employee is relieved by paying a lower agreed upon fee to the health care provider. At issue here is not
 
 *79
 
 the employer’s obligation to provide benefits or medical care for the injured employee, but simply the amount of the professional fee that was due and payable to the health care provider for services rendered. Liability to the patient is not affected, as the employer is still liable for the fee, whatever it is determined to be. In no way does paying a lesser amount to the health care provider pursuant to a contract relieve any liability to the injured employee under the LWCA. The employer is simply paying what the provider contractual agreed to charge.
 

 The argument has been advanced that these PPO contracts are frequently misapplied and mismanaged and this could lead to health care providers providing less or substandard care to workers’ compensation patients. First of all, we note these PPO agreements are just that agreements which can be opted out of or not signed at all. In no way are health care providers forced to enter into these contracts. Further, there has been no evidence advanced, besides conjecture, that indicates that workers’ |17compensation patients are receiving substandard care or that providers are no longer treating workers’ compensation patients. Agilus’s corporate representative even testified, “I think the care, the actual hands-on care delivered by the provider, me, is the same no matter what the insurance coverage is, whether it’s worker’ comp or health insurance or a network.”
 

 We find the LWCA specifically contemplates health care providers charging less than the fee schedule for their services to injured workers’ compensation patients based on La. R.S. 23:1034.2(E). Further, we find nothing in the LWCA that prohibits a health care provider from contracting to charge less than the reimbursement schedule whether through a PPO or other agreement. We also note that the health care provider in this case voluntarily entered into the PPO agreement with First Health. Agilus was not forced to sign the contract, but did so for the benefit of receiving patient steerage in general, as their corporate representative testified. This was a business decision, and Agilus could have, and did in 2008, opt out of the First Health Network. Agilus claims that by simply listing its standard rate in the bill the LWCA forbids the payment of anything less than the maximum amount listed in the reimbursement schedule, thus relieving them of their obligation under the PPO contract to accept a lesser fee for their care. As discussed above, this is a strained reading of the LWCA and the PPO agreement in question, and we decline to accept it. Because we find that the LWCA does not prohibit PPO discounts for workers’ compensation services and that the employer in this case did not under pay for the services rendered, discussion of the issue of penalties and attorneys’s fees for underpayment is moot.
 

 CONCLUSION
 

 For the reasons set forth above, we find the court of appeal erred in finding that hsPPO discount agreements for workers’ compensation services violate the provisions of the LWCA. We find the LWCA does not prohibit PPO agreements providing for discounted fees for workers’ compensation services to health care providers. The decision of the court of appeal is hereby reversed.
 

 REVERSED.
 

 *
 

 Retired Judge Philip C. Ciaccio, assigned as Justice
 
 ad hoc,
 
 sitting for Chief Justice Catherine D. Kimball.
 

 [1]
 

 . The reimbursement rate was later reduced to 80% of the maximum amount by a letter sent from First Health to Agilus amending the contract. This was stipulated to by the parties.
 

 [2]
 

 . Taylor was treated by Agilus several times in August of 2007. For each visit and bill, Liberty Mutual sent an explanation of benefits tó Agilus, showing the discounted rate for the service stating each bill was reviewed under the PPO agreement with First Health.
 

 [3]
 

 . In pertinent part, the contract provides:
 

 2.2 Covered Medical Services
 

 "Covered Medical Services" means those services provided to a Participating Patient for which the Payor is obligated to pay pursuant to the Payor's Health Benefit Plan or Health Insurance Plan.
 

 2.3 Health Plan
 

 "Health Plan” means any contract, certificate, policy, plan document or other legally enforceable instrument and amendments thereto issued, sponsored, or administered by a Payor under which a Participating Patient may be entitled to health services or health service benefits. These Health Plans may include, but are not limited to, indemnity plans, health maintenance organizations, insurance group health plans, and
 
 ■workers’ compensation plans.
 

 2.7 Payor
 

 "Payor” means an employer, trust fund,
 
 insurance carrier,
 
 health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other entity which has an obligation to provide medical services or benefits for such services to Participating Patients, or any other entity which has contracted with First Health to use First Health's Preferred Provider Panel.
 

 2.8 Payor Agreement (or PPO Agreement) "Payor Agreement" or "PPO Agreement” is an instrument between a Payor and First Health or its authorized representative which provides for Participating Providers to render health care services pursuant to this Agreement to Participating Patients at the reimbursement amounts set forth herein.
 

 (Emphasis Added.) Article 4, pertaining to payment, also contains specific workers’ compensation provisions and states:
 

 4.2 Reimbursement Procedure
 

 The rules and procedures for reimbursement under this Agreement are as follows:
 

 a) Pursuant to each Payor's Payor Agreement with First Health, Payor shall be liable for the lesser of Provider’s billed charges or the amount set forth in Appendix A of this Agreement, less amounts of any copayments, deductibles, and coordination of benefits, when Covered Medical Services are provided to a Participating Patient.
 

 b) In no case shall reimbursement exceed Provider’s billed charges.
 

 c) If assignment has been made to Provider. Payor shall make payment directly to Provider.
 

 d) Payment shall be made within thirty (30) calendar days of Payor's receipt of an accurate and complete bill submitted by Provider in accordance with Paragraph 4.1, above.
 

 e) For Workers’ Compensation Payors, reimbursement under this Agreement shall not exceed the amount allowed for Provider’s services under Workers’ Compensation laws and regulations.
 

 f) If Provider practices in multiple locations which are subject to different rates of reimbursement under the terms of separate Agreements with First Health using the same, the lowest of the different rates of reimbursement shall apply.
 

 
 *74
 
 4.3 Payment in Full
 

 Provider agrees to accept the reimbursement amounts specified in Appendix A as payment in full for Covered Medical Services rendered to Participating Patients. In no case shall reimbursement exceed Provider’s billed charges. Provider further agrees that when Covered Medical Services are provided to a Participating Patient, the Participating Patient shall be liable only for actual copayments and/or deductibles as determined by the Payor in accordance with the Payor’s Health Plan.
 

 Appendix A, referenced in Article 4, Paragraph 4.3 sets forth reimbursement schedules and provides as follows with regard to workers’ compensation:
 

 D. Reimbursement from Workers’ Compensation Payors for services rendered to occupationally ill/injured employees shall be as follows:
 

 (1)If any state law or regulation establishes rules or guidelines for the payment of health care services, reimbursement shall not exceed 85% of the maximum amount payable under such rules or guidelines. Any procedure code which is unvalued shall be reimbursed pursuant to Section A, Paragraph (3), of this Appendix. This rate of reimbursement shall apply whether such rales or guidelines are in existence at the time of execution of this agreement or established at a later time.
 

 (2) In the absence of any state law or regulation set forth in Section D, Paragraph (1), reimbursement shall be the method set forth in Section A, Paragraphs (1), (2) and
 

 (3) of this Appendix, but in no event shall reimbursement exceed the usual and customary charge for the services as determined by First Health or Payor.
 

 The reimbursement percentage was later amended to 80% through a subsequent letter sent from First Health to Agilus. This was stipulated to by Agilus pre-trial.
 

 [4]
 

 . The plaintiff in the instant case did not argue to this court that the defendants did not give proper notice pursuant to the requirements of La. R.S. 40:2203.1. The plaintiffs raised the issue in their pre-trial memorandum, but failed to argue this position in the court of appeal and to this court. While notice under La. R.S. 40:2203.1 is an issue in similar cases, because this issue was not raised in connection to this writ application, we will not reach it in this opinion.