JOHNSON, J.
dissents in part and assigns reasons.
1,1 respectfully dissent from that part of the per curiam opinion which reverses the OWC’s judgment permitting the claimant to recover $422,043.59 in medical expenses allegedly written off by Medicaid.
The record indicates Mr. Benoit was a faithful and hard-working employee of Turner Industries for over twenty years. Mr. Benoit worked as a laborer primarily at the CITGO refinery in Lake Charles, Louisiana. His work as a laborer required Mr. Benoit to do routine maintenance at the facility, which consisted of the “dirty work” of shoveling and disposing of chemical residue and muck from the sewers, ditches and sump collection points throughout the refinery’s processing units. The record further demonstrates, and the lower courts found, Mr. Benoit sufficiently proved through expert testimony that his work exposed him to chemicals, specifically an overexposure to benzene, which caused him to develop acute myeloid leukemia (“AML”), resulting in his death.
Mr. Benoit became disabled and unable to work in July of 2006. In early September of 2006, he was diagnosed with AML. He filed a workers’ compensation petition (Form 1008) on October 2, 2006. For more than two years, Turner continued 12to deny Mr. Benoit’s claim, even after discovery was conducted and Mr. Benoit submitted expert reports and other documents evidencing his exposure to benzene and its causal connection to AML. Mr. Benoit died in November of 2007. It was not until October of 2008 that Turner supplied its own expert reports to attempt to controvert Mr. Benoit’s claim.
I find Turner’s conduct throughout its handling of Mr. Benoit’s workers’ compensation claim to be particularly egregious. Turner denied Mr. Benoit’s claim from its inception, and continued to deny it for two years despite expert reports provided by the worker, and without any reports of its own to controvert them. Turner actively sought to defeat Mr. Benoit’s claim and unduly delayed the proceeding for years by its failure to maintain and/or produce relevant documents. Although Turner eventually hired its own experts to dispute Mr. Benoit’s expert reports, the primary underlying basis for its continued denial of his claim was the alleged failure of Mr. Benoit to demonstrate the extent and duration of his exposure to benzene while working for Turner. However, both the workers’ compensation hearing officer and the court of appeal found Turner’s position to be disingenuous. Turner sought this information from Mr. Benoit, yet failed to produce such records in discovery even though they are mandated. The hearing officer stated:
But, from all the testimony, apparently, Turner didn’t seem to know much more about the extent and duration of the exposure than Mr. Benoit did. It is a genuine puzzlement that a company under federal and state mandate to monitor its workers’ exposure to hazardous products such as benzene could show up in court with virtually no monitoring records. None. He worked for Turner and Citgo for almost two decades, yet the company’s files were utterly bereft of any medical monitoring records or personal monitoring records regarding this individual. This deceased worker here appears to be “the man who never was.”
Further, the court of appeal noted:
We attribute much of the unconscionable delay to Turner, who was less than forthcoming in providing documentation to which Mr. Benoit was ^legally entitled to have. Specifically, Turner was inexplicably unable to provide evidence documenting the quantity and duration *637 of the benzene levels to which Mr. Be-noit was exposed.
Benoit, 63 So.3d at 446 n. 3. Despite these obstacles, Mr. Benoit produced sufficient expert testimony to support his claim and demonstrate a causal connection between his exposure to benzene during his Turner employment and AML.
Not only did Turner’s actions deny Mr. Benoit payment of workers’ compensation benefits, its refusal of the claim and its refusal to pay medical benefits forced Mr. Benoit to seek all of his medical treatment through the charity system. Turner’s actions denied Mr. Benoit a right to chose his own doctors, which unquestionably would have provided him with more personal, experienced and specialized treatment for his leukemia.
Now, the majority of this Court is denying Mrs. Benoit an award of medical expenses incurred by Mr. Benoit, but alleged by Turner to have been “written off’ by Medicaid. Notably, while Turner argues $422,043.59 of the total $625,168.27 in medical expenses was not actually paid by Medicaid, but instead represents the portion of the medical expenses attributable to the Medicaid write-off, I find nothing in the record to prove that this amount has been written off. Louisiana law does provide that medical providers who participate in the Medicaid program are required to accept Medicaid payment as payment in full and are prohibited from the billing or collecting additional amounts from the recipient or the recipient’s responsible party. See La. R.S. 46:437.12(A)(10)(a). However, Mrs. Benoit asserted at oral argument that she has received hen/collection letters from health care providers requesting payment.[1]
Additionally, I agree with Mrs. Benoit’s argument that the portion of medical 14expenses that were not paid by Medicaid, and have not been paid by anyone, cannot be extinguished under La. R.S. 23:1212. This statute provides, in pertinent part:
A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. . (Emphasis added)
B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer.
La. R.S. 23:1212(A) provides that the employer’s obligation to pay medical expenses is extinguished when a payment has been made by someone other than the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs. Because Medicaid is the only entity that has paid any of the medical expenses, pursuant to the clear language of the statute, Medicaid’s payment of Mr. Benoit’s medical expenses does not extinguish Turner’s responsibility for those medical expenses. Further, the amount of the write-off was not a payment made by anyone, and thus is does not fall under La. R.S. 23:1212(A).
The majority relies on this Court’s opinion in Bozeman v. State, 03-1016 (La.7/2/04), 879 So.2d 692, where we concluded that a plaintiff in a tort action could not recover medical expenses written off *638 under the Medicaid program. While the majority finds the principles enunciated in Bozeman equally applicable in a workers’ compensation context, I disagree.
In Bozeman, this Court addressed the application of the collateral source rule to medical expenses written off by Medicaid. After looking at approaches developed by various courts regarding the medical expenses written-off by healthcare providers pursuant to the Medicaid agreement, we adopted an approach called the “benefit of | -the bargain,” which awards the plaintiff the full value of his medical expenses, including the write-off amount, where the plaintiff has paid some consideration for the benefit of the written-off amount. Bozeman, 879 So.2d at 701, 703. In applying that approach, this Court distinguished Medicaid, a social service health care provider for persons with low income and limited assets, from Medicare, which is healthcare insurance funded by beneficiaries and their employers. Id. at 704-05. We articulated that while care of the nation’s poor is an admirable social policy, “where the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives, we hold that the plaintiff is unable to recover the ‘write-off amount.” Id. at 705. This Court concluded:
Medicaid recipients are unable to collect the Medicaid “write-off’ amounts as damages because no consideration is provided for the benefit. Thus, plaintiffs recovery is limited to what was paid by Medicaid. However, in those instances, where plaintiffs patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the “write-off’ amount.
Id. at 705-06.
In my view, the holding in Bozeman cannot be applied to this workers’ compensation case. Bozeman is premised on the finding that a tort plaintiff pays no consideration for the benefit of receiving Medicaid payments. Unlike tort defendants, a workers’ compensation employer has a duty to be proactive and provide its injured employee with medical treatment and directly pay for the employee’s medical expenses pursuant to the LWCA. Employers are statutorily obligated under La. R.S. 23:1203[2] to furnish medical treatment to an injured employee. In exchange for tort | (¡immunity, the workers’ compensation statutes require the employer to pay medical expenses as they accrue. This Court recently explained:
*639 The LWCA establishes a compromise in which employees and employers surrender certain advantages in exchange for others which are more valuable to both the parties and to society in general. The employer gives up the immunity he otherwise would enjoy in cases where he is not at fault, and the employee surrenders his former right to full damages and accepts a more modest claim for bare essentials, represented by compensation. The LWCA also establishes a duty on employers to furnish all necessary medical and vocational rehabilitation expenses. La. R.S. 23:1203. The Act states, “In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal ...” La. R.S. 23:1203(A). Thus, employers have a duty to “furnish” all necessary medical care and treatment for the injured employee.
Agilus Health v. Accor Lodging North America, 2010-0800 (La.11/30/10), 52 So.3d 68, 74 (internal citations removed). Here, Mr. Benoit was entitled to receive statutorily mandated medical treatment and payment of his medical bills. However, due to Turner’s callous denial of his claim, Mr. Benoit was deprived of the benefits of the workers’ compensation scheme, and was forced to rely on treatment available to indigents pursuant to the Medicaid program. Mr. Benoit was denied his choice of medical provider and denied his right to seek treatment from a non-Medicaid provider. In addition to being deprived of the right to choose his doctor, Mr. Benoit’s patrimony was further diminished because he was forced to travel considerable distances for treatment. These trips were costly, resulting in expenses for gas and 17lodging. Thus, Medicaid was not a truly free service in Mr. Benoit’s case.
Further, in my view, it is poor policy to apply the Bozeman rule in a workers’ compensation context. Under the workers’ compensation scheme, Turner had a statutory duty to provide all necessary medical treatment due to Mr. Benoit’s medical condition. Allowing employers to receive the benefit of the Medicaid write-off makes it profitable for employers to deny claims at the outset despite their validity. This results in unnecessary pain and suffering, and sometimes an early death for claimants with limited financial resources, like Mr. Benoit. In such cases, it is financially beneficial for employers to deny these claims, and force the employee to rely on the Medicaid system for treatment. The majority’s holding provides that, at most, the employers will have to pay the Medicaid lien, not the full amount of medical bills, thus shifting the real burden of taking care of injured employees to the State.
Turner, as Mr. Benoit’s employer, had a statutory duty to provide Mr. Benoit with all medical care necessary to treat his AML, as well as a duty to pay the related medical expenses. In my view, it is an outrage that an employee injured on the job, such as Mr. Benoit, was forced to turn to Medicaid to pay for his medical treatment. In this case, Mr. Benoit was forced to seek’ medical treatment through Medicaid due to Turner’s repeated failure to authorize treatment. If Turner had paid Mr. Benoit’s medical expenses as they accrued, the employer would have expended an amount far exceeding the amount paid by Medicaid. By contrast, Turner paid absolutely nothing for Mr. Benoit’s medical treatment, while the State, through the Medicaid program, paid at least $203,124.68.
The per curiam opinion thus rewards Turner with a windfall, since this company purposefully avoided its responsibility to *640 pay for Mr. Benoit’s medical treatment. Turner failed to perform its duties under the workers’ compensation | ^scheme by failing to provide and pay for Mr. Benoit’s medical treatment. It is thus inherently unfair to reward Turner by allowing it to benefit from the workers’ compensation scheme.
The opinion gives Turner, and indeed all employers within the State an incentive to deny claims, deny treatment, and place the burden on the State to take care of these injured employees. This case creates a precedent where there is no real penalty imposed for Turner’s behavior. While La. R.S. 23:1201 provides for penalties due to an employer’s failure to pay medical expenses or benefits, the total amount of penalties is statutorily capped at $8,000.00.[3] This statutory cap leaves no discretion to the hearing officer or courts to award substantial and meaningful penalties where they are factually justified. In this case, the “penalty” certainly does not punish Turner, nor does it serve to deter egregious conduct.

. This information is not in the record because the alleged lien/collection letters were received subsequent to the trial of this matter.

. La. R.S. 23:1203 provides, in pertinent part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.

. La. R.S. 23:1201 (F).