PER CURIAM.
|TIn this workers’ compensation matter, we are called upon to decide whether the Office of Workers’ Compensation (“OWC”) erred in awarding medical expenses to claimant in the amount of $625,168.27. For the reasons that follow, we conclude the OWC erred in awarding medical expenses under the facts of this case.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Claimant, Jerry Wayne Benoit, sought indemnity benefits and medical expenses compensation against his employer, Turner Industries Group, L.L.C. (“Turner”).[1] Claimant alleged he developed acute mye-loid leukemia (“AML”) during his twenty-seven year employment with Turner due to his exposure to chemicals, including benzene. Turner denied the claim, and claimant filed a disputed claim for compensation with the OWC.
After a trial on the merits, the OWC made a factual finding that claimant’s AML was related to benzene exposure during his employment at Turner. Accordingly, the OWC awarded claimant indemnity benefits, total medical expenses in *631 the amount of $625,168.27, and attorney fees.
|2Turner appealed. The court of appeal affirmed the OWC judgment in its entirety. Benoit v. Turner Industries Group, LLC, 10-1460 (La.App. 3 Cir. 5/4/11), 63 So.3d 443.
Upon Turner’s application, we granted certiorari for the purpose of considering the correctness of the OWC award of medical expenses. Benoit v. Turner Industries Group, LLC, 11-1130 (La.9/23/11), 70 So.3d 809. Although Turner assigns other errors in its brief, it was not our intent to grant the application as to these issues. Accordingly, as to all assignments of error other than the assignment relating to medical expenses, we will recall and deny the •writ. See Ruiz v. Oniate, 97-2412, p. 12 (La.5/19/98), 713 So.2d 442, 449; Sanders v. Zeagler, 96-1170, p. 6 (La.1/14/97), 686 So.2d 819, 823; Ledbetter v. Concord Gen. Corp., 95-0809, p. 8 (La.1/6/96), 665 So.2d 1166, 1171.
The sole issue presented for our consideration is whether the OWC erred in awarding medical expenses to claimant under the facts of this case.
DISCUSSION
At the outset, we note claimant qualified for the Medicaid program. Of the total $625,168.27 charges submitted, Medicaid paid $203,124.68. According to Turner, the remaining $422,043.59 was written off under the Medicaid program. Turner argues claimant is not entitled to recover the $203,124.68 paid by Medicaid, nor the $422,043.59 written off amount. Because Turner makes different arguments with regard to these amounts, we will address them separately.

Medical Expenses Paid by Medicaid

In determining the effect to be given to the $203,124.68 paid by Medicaid, the arguments of the parties focus on the language of La. R.S. 23:1212, which provides:
|SA. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses ....
B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments by such entities shall be subject to recovery by the state against the employer or insurer, [emphasis added]
Turner relies on Paragraph A of the statute, which it interprets as extinguishing any claim for medical expenses against an employer for medical expenses which have been paid by Medicaid. However, claimant seizes on language in Paragraph B of the statute, which he maintains stands for the proposition that payments by Medicaid do not extinguish his claim for recovery.
To understand the parties’ arguments, some background information on the evolution of La. R.S. 23:1212 is helpful. Prior to 1990, the law prohibited an employer from taking an offset for medical expenses paid by a health care insurer. See Bryant v. New Orleans Public Service, Inc., 414 So.2d 322 (La.1982) (holding a reduction or offset for benefits paid by an insurer “constitutes an indirect employee contribution to the cost of workers’ compensation and is prohibited by La.R.S. 23:1163”).
Responding to pressure from the business community in 1989, the legislature enacted a new section in the workers’ compensation act to permit a medical offset, if the benefits were paid by someone other *632 than a direct payment by the employee, a relative, or friend of the employee. 1 Denis Paul Juge, Louisiana Workers’ Compensation, § 12:7 (2d ed.2002). As enacted effective January 1, 1990, La. R.S. 23:1212 provided in pertinent part:
|4Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of La. R.S. 23:1163 ....
In Granger v. Nelson Logging, 96-223, p. 6 (La.App. 3 Cir. 12/4/96), 685 So.2d 400, 403, the court of appeal, in an opinion by then-Judge Knoll, held that under the 1990 version of the statute, the payment of expenses by Medicare extinguished the obligation of an employer to pay medical expenses, although the court felt this resulted in a windfall to the employer:
We have serious doubts as to whether it was the intention of the legislature to have payments by Medicare extinguish the obligation of the employer to pay medical expenses under worker’s compensation. The statute’s operation in the case sub judice undermines the basic principle of worker’s compensation law, namely, that persons who enjoy the benefit of an employee’s labor should be the ones to bear the cost of injuries incident to that labor. As a result of the application of La. R.S. 23:1212 to the instant case, the State will ultimately bear much of the burden of Mr. Gran-ger’s injuries, while C & M, having enjoyed the benefit of Mr. Granger’s labor, will receive a windfall. Nevertheless, the language of the statute is quite clear. “Payment by any person or entity ... of medical expenses that are owed under this chapter shall extinguish the claim against the employer or insurer for those medical expenses.” La. R.S.23:1212. We, therefore, are constrained to hold that the payment of $42,540.00 in medical expenses by Medicare extinguished Mr. Granger’s claim for those expenses, but only to the amount paid. The record reflects that $36,970.11 of Mr. Granger’s medical expenses were not paid by Medicare. The hearing officer erred in holding that these expenses had also been extinguished, and C & M remains liable for these expenses.
[italics in original; boldfacing added]
|fiIn La. Acts 2001, No. 1062, which became effective August 15, 2001, the legislature amended La. R.S. 23:1212 to provide that “the medical expenses are not to be extinguished as an employer debt if paid by Medicaid or other state agencies.” Morton v. Wal-Mart Stores, Inc., 36,398 (La.App. 2 Cir. 10/25/02), 830 So.2d 533; Blair v. Wal-Mart Stores, Inc., 01-2211 (La.App. 4 Cir. 5/15/02), 818 So.2d 1042. The amendment also gives Medicaid and the other state agencies the right to recover any payments from the employer. Juge, supra at § 12:7.
As seen by this history, it is obvious the 2001 amendment adding the language in Paragraph B was intended to address the dilemma raised in Granger. Reading the statute as a whole, it is clear that under La. R.S. 23:1212(A), the payment of medical expenses by Medicaid extinguishes any claim by the employee against the employer for those expenses. La. R.S. 23:1212(B) carves out a narrow exception, whereby the state is granted a right to recover these expenses from the employer.
Applying this reasoning to the case at bar, we find the direct payment of $203,124.68 in medical expenses by Medicaid extinguished any claim the claimant *633 may have had to recover these amounts from Turner. Accordingly, the OWC erred in awarding medical expenses to claimant for the $203,124.68 paid by Medicaid.

Medical Expenses Written Off by Medicaid

Having found claimant is not entitled to recover the $203,124.68 in medical expenses paid by Medicaid, we now turn to the remaining $422,043.59 of the $625,168.27 medical expense award, which Turner refers to as the written off | fiamount.[2] Turner relies on our opinion in Bozeman v. State, 03-1016 (La.7/2/04), 879 So.2d 692 for the proposition that claimant may not recover this written off amount.
In Bozeman, we addressed the question of whether a plaintiff in a tort action was entitled to recover medical expenses written off pursuant to the Medicaid program. We discussed the nature of the Medicaid write-off process, explaining:
When an injured plaintiff is a Medicaid recipient, federal and state law require that the health care providers accept as full payment, an amount set by the Medicaid fee schedule, which, invariably, is lower than the amount charged by the health care provider. The difference between what is charged by the health care providers and what is paid by Medicaid is referred to as the “write-off” amount.
After reviewing jurisprudence from around the country, we concluded a plaintiff in a tort action could not recover medical expenses written off under the Medicaid program:
Care of the nation’s poor is an admirable social policy. However, where the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives, we hold that the plaintiff is unable to recover the “write-off’ amount. This position is consistent with the often-cited statement in Gordon v. Forsyth County Hospital Authority, Inc., 409 F.Supp. 708 (M.D.N.C.1975), affirmed in part and vacated in part, 544 F.2d 748 (4th Cir.1976), that “(i)t would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical expenses from a tort-feasor and pocket the windfall.” After careful review, we conclude that Medicaid is a free medical service, and that l7no consideration is given by a patient to obtain Medicaid benefits. His patrimony is not diminished, and therefore, a plaintiff who is a Medicaid recipient is unable to recover the “write off’ amounts. The operative words here are “free medical care,” which, again, we hold is applicable to plaintiffs who receive Medicaid, not plaintiffs who receive Medicare or private insurance benefits.
Id. at pg. 6, 879 So.2d at 705.
Claimant urges us to distinguish Boze-man from the instant case on the ground Bozeman arose in the context of a tort *634 action. Claimant points out that an employer has a statutory duty under La. R.S. 23:1203 to furnish medical treatment to an injured employee, and argues he was forced to seek benefits through Medicaid due to Turner’s repeated failure to authorize treatment.
Under the workers’ compensation law, the employee relinquishes his right to be made whole in a civil suit, while the employer cedes his available tort defenses. Deshotel v. Guichard Operating Co., Inc., 03-3511 (La.12/17/04), 916 So.2d 72, 77. Generally speaking, the workers’ compensation regime represents a quid pro quo compromise of interests, whereby “the employee receive[s] an absolute right to recover limited benefits in exchange for the employer’s tort immunity.” See Harris v. State, Dept. of Public Safety & Corrections, 05-2647 (La.App. 1 Cir. 11/3/06), 950 So.2d 795, 799, writ denied, 06-2817 (La.3/9/07), 949 So.2d 440.
In furtherance of this public policy, La. R.S. 23:1203(B) provides, “[t]he obligation of the employer to furnish such care, services, treatment, drugs, and supplies ... is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.” Similarly, La. R.S. 23:1033 provides, “[n]o contract, rule, regulation or device whatsoever shall operate to 18relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.”
We recently interpreted these statutes in Agilus Health v. Accor Lodging North America, 10-800 (La.11/30/10), 52 So.3d 68, wherein a health care provider filed suit against an employer, seeking a determination of the validity of preferred provider organization (“PPO”) contracts, whereby an employer pays a health care provider for services rendered to an injured employee at a negotiated amount below that statutorily provided by the reimbursement schedule. We concluded the reduction of the employer’s liability for medical expenses below the amount set forth in the reimbursement schedule, pursuant to the rates agreed to by the health care provider in a PPO contract, does not relieve the employer of liability in violation of La. R.S. 23:1033:
We also note that no part of the employer’s liability to “furnish” adequate medical care to the injured employee is relieved by paying a lower agreed upon fee to the health care provider. At issue here is not the employer’s obligation to provide benefits or medical care for the injured employee, but simply the amount of the professional fee that was due and payable to the health care provider for services rendered. Liability to the patient is not affected, as the employer is still liable for the fee, whatever it is determined to be. In no way does paying a lesser amount to the health care provider pursuant to a contract relieve any liability to the injured employee under the LWCA. The employer is simply paying what the provider contractual [sic] agreed to charge.
Id. at p. 16, 52 So.3d at 78-79
We went on to recognize that nothing in the workers’ compensation act “prohibits a health care provider from contracting to charge less than the reimbursement schedule whether through a PPO or other agreement.” Id. at p. 17, 52 So.3d at 79. Accordingly, we held PPO discount agreements for workers’ 19compensation services did not violate the provisions of the workers’ compensation act.
*635 Although the Medicaid write offs at issue are different from the PPO discount agreements in Agilus Health, we find there are some clear parallels. Louisiana’s Medicaid program operates by the formation of contracts with individual health care providers for medical services. One requirement of the Medicaid program, as provided by 42 C.F.R. § 447.15, is that participation in the Medicaid program is limited to “providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance, or co-payment required by the plan.” Louisiana law requires participating health care providers to “comply fully with all federal and state laws and rules pertaining to the medical assistance programs.” See La. R.S. 46:437.11(B). Under state law, providers are specifically required to accept Medicaid payment as payment in full, and are prohibited from the billing or collecting additional amounts from the recipient or the recipient’s responsible party. La. R.S. 46:437.12(A)(10)(a) (quoting Frank L. Maraist & Thomas C. Galligan, “The Employer’s Tort Immunity: A Case Study in Post-Modern Immunity,” 57 La.L.Rev. 467,473 (1997)).
Applying the reasoning of Agilus Health, we conclude the mere fact that the employer may have benefitted from a reduction of expenses through the Medicaid write-off process, does not impermissibly diminish the employer’s liability for medical expenses. As discussed above, the employer remains liable for the reduced amount of medical expenses paid by Medicaid, although by operation of La. R.S. 23:1212, this reimbursement is owed to the state rather than the claimant.
Having found no conflict between the Medicaid write-off process and the workers’ compensation law, we find the principles enunciated in Bozeman are equally | inapplicable in a workers’ compensation context. As we explained in Bozeman, Medicaid is a free medical service, and no consideration is given by a patient to obtain Medicaid benefits. As a result, claimant would receive an improper windfall if he was allowed to recover for medical expenses which have been reduced by health care providers as a result of their contractual arrangements with Medicaid. Such double recovery of damages is not permitted under Louisiana law. See Gagnard v. Baldridge, 612 So.2d 732, 736 (La.1993) (“Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana law unless expressly provided for by statute”). Accordingly, the portion of the OWC’s judgment permitting claimant to recover the written off amount of $422,043.59 is erroneous and must be reversed.[3]
DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it affirms the judgment of the Office of Workers’ Compensation awarding claimant total medical expenses in the amount of $625,168.27. As to the remaining assignments of error, the writ is recalled and denied.

. Mr. Benoit died after filing the claim, and his wife was substituted in his place. For purposes of clarity, we will refer to Mr. Be-noit as "claimant'' throughout this opinion, although we recognize his wife is the true party in interest.

. Turner has consistently asserted that the portion of the medical expenses not paid by Medicaid was written off. However, a footnote in claimant’s brief suggests Turner has not proven that any unpaid medical- expenses have been written off, and indicates claimant’s counsel "received lien letters from Mr. Benoit's health care providers seeking unpaid balances.” Our review of the record indicates none of these purported "lien letters” were introduced into evidence, nor has claimant produced any support for his theory the unpaid medical expenses were not written off, despite being given an opportunity to file a supplemental brief in this court. In the absence of any evidence to the contrary, we accept Turner's contention that the expenses not paid by Medicaid were written off.

. We acknowledge it is conceivable (although not proven in the instant case) that an unscrupulous employer might intentionally deny benefits in an effort to force the employee to obtain free medical treatment through Medicaid, thereby giving the employer the benefit of any Medicaid write offs in the event the employer is ultimately cast in judgment in medical expenses. Nonetheless, it would be improper for this court to attempt to fashion a penalty for such a perceived evil by awarding a claimant medical expenses to which he is not entitled. If a remedy is necessary, it must be addressed by the legislature, not the courts.