STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-147

JAKE CHIMENTO

VERSUS

KDM ELECTRIC/RAPIDES PARISH WORK RELEASE

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 13-05359
JAMES L. BRADDOCK, WORKERS COMPENSATION JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of John D. Saunders, John E. Conery, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Donna U. Grodner**
**Grodner & Associates**
**2223 Quail Run, B-1**
**Baton Rouge, Louisiana 70808**
**(225) 769-1919**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jake Chimento**

**Robert A. Dunkelman**
**Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P.**
**Post Office Box 1786**
**Shreveport, Louisiana 71166-1786**
**(318) 221-1800**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **KDM Electric of Alexandria, LLC**
    **The Standard Fire Ins. Co.**

**CONERY, Judge.**

Claimant, Jake Chimento (Mr. Chimento), appeals the November 9, 2016 judgment of the Workers' Compensation Judge (WCJ) denying his claim for indemnity benefits, medical benefits, medical expenses, penalties, and attorney fees from his employer KDM Electric of Alexandria, LLC (KDM) and its insurer, The Standard Fire Insurance Company (Standard). Mr. Chimento alleged that on September 25, 2012, he received an electrical shock which precipitated a heart attack and fall from a ten foot ladder. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Mr. Chimento's 1008 Disputed Claim for Compensation was filed on July 11, 2013, against his employer KDM. This workers' compensation claim is a companion case to Mr. Chimento's tort suit seeking damages for injuries received in the same incident which occurred on September 25, 2012. In the tort case, the trial court granted KDM's and Standard's motion to compel dismissal of Mr. Chimento's tort claims against the only remaining defendants, KDM and Standard. This judgment in favor of KDM and Standard in the tort case is also on appeal by Mr. Chimento before this panel, docketed as 17-146, and is addressed in a separate opinion.

Mr. Chimento was incarcerated at the time of the alleged September 2012 incident and had been working for KDM since February 21, 2011, as an electrician's helper under the auspices of the Rapides Parish work release program. KDM and Standard filed a motion for summary judgment on September 23, 2014, and a cross-motion for summary judgment was filed by Mr. Chimento on October 27, 2014. The WCJ heard the cross-motions and issued oral reasons on December 2, 2014, denying Mr. Chimento's motion, and granting KDM and Standard's

motion which dismissed with prejudice all claims made for both medical and indemnity benefits. A judgment reflecting the WCJ's ruling was signed on December 16, 2014. Mr. Chimento filed a motion for reconsideration/new trial, which was granted by the WCJ after hearing on January 12, 2015, for reasons assigned in open court. Judgment granting a new trial was signed on January 29, 2015.

Trial on the merits in this matter was held on August 4, 2016. A court order had been signed by the WCJ ordering the Department of Corrections (DOC) to transport Mr. Chimento so he could attend the proceedings. However, his counsel provided the WCJ with the address of the wrong DOC facility housing Mr. Chimento, and he was not transported to attend the hearing. In lieu of his live testimony, his two depositions, the first taken April 17, 2014, in connection with this workers' compensation case, and the second taken February 8, 2016, in conjunction with the tort case, were submitted into evidence without objection by all counsel.

Following the close of testimony, the WCJ allowed the submission of post-trial memoranda by both parties. In his post-trial submission to the WCJ, counsel for Mr. Chimento attached documents and made references to documents and testimony that was not introduced into evidence at the trial of the matter. Counsel for KDM filed a motion to strike and sought sanctions. The WCJ issued oral reasons in open court granting KDM's motion to strike, but denying sanctions. The judgment striking from the record all attachments to Mr. Chimento's post-trial submission was signed on September 27, 2016.

The WCJ gave oral reasons for ruling on October 26, 2016, finding in favor of KDM and Standard, dismissing Mr. Chimento's claims for indemnity benefits,

2

medical benefits, medical expenses, penalties, and attorney fees. A formal judgment was issued by the WCJ on November 9, 2016, from which Mr. Chimento has timely appealed.

## ASSIGNMENT OF ERRORS

Mr. Chimento has assigned the following errors on appeal:

1. The Trial Court erred in finding that Mr. Chimento failed to submit sufficient evidence to carry his burden of proof. Manifest error on the facts and error of law in failing to allow Mr. Chimento a presumption.

2. The Trial Court erred in its evidentiary rulings.

The proffered testimony of Jake Chimento, III and Keri Chimento Kelly, who are the adult children of MR. CHIMENTO and the expert report of Dr. Glenn Kelly should have been admitted. Error of Fact and law.

The Trial Court should not have relied upon evidence offered on summary judgment that was not offered at trial.

3. The trial Court erred in making multiple erroneous findings of fact that are inconsistent with the evidence offered at trial. - Error of fact and law.

4. The Trial Court erred in finding because medicaid paid, KDM is "absolved" from reimbursing the Medicaid lien [,] and from paying the balance owed to the health care providers. - Error of fact and law.

5. The Trial Court Erred in finding the Medicaid billing was all paid, where St. Cabrini had to write off $164,476.91 as well as other providers. - Error of law

6. The Trial Court erred in failing to award indemnification. - Error of law.

7. The Trial Court Erred in finding the attorney time and expense offered post-trial, but before judgment was untimely. - Error of law.

3

# LAW AND DISCUSSION

## Standard of Review

The standard of review to be utilized in workers' compensation cases was discussed in *LeBlanc v. Wal-Mart Stores, Inc.*, 15-558, pp. 10-11 (La.App. 3 Cir. 11/4/15), 177 So.3d 1125, 1132-33, noting:

> The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, pp. 2-3 (La.App. 3 Cir. 6/5/13), 115 So.3d 1211, 1214–15, *writ denied*, 13-1934 (La.11/8/13), 125 So.3d 455 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La.6/14/02), 818 So.2d 784):
>
>> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't. of Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).
>>
>> "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ*

4

> *denied*, 04-315 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61)

### *Claimant's Burden of Proof*

The WCJ in its written reasons for ruling correctly defined the burden of proof required of a claimant seeking benefits from his employer under the Louisiana Workers' Compensation Act and stated:

> An employee is entitled to workers' compensation benefits if the employee receives personal injury by accident arising out of and in the course of employment. La.R.S. 23:1031(A), *McLin v. Industrial Specialty Contractors, Inc.*, 2002-1539 (La. 7/2/03), 851 So. 2d 1135, *Scott v. Super 1 Foods*, 45,636 (La. App. 2d Cir. 9/29/10), 48 So. 3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La.R.S. 23:1021(1).

> Although the Workers Compensation Law is liberally construed in favor of coverage, the claimant's burden of proving an accident is not relaxed. The claimant must prove by a preponderance of the evidence that that an accident occurred, and the resulting disability is related to the on-the-job injury. The worker must also prove this by a preponderance of the evidence, and prove, as well, by a preponderance of the evidence, that medical care received was a result of injuries sustained in any alleged accident.

A claimant has to establish a work-related accident by a preponderance of the evidence, as outlined by the supreme court *in Bruno v. Harbert Int'l. Inc.*, 593 So.2d 357 (La.1992). *Bruno* further stated that "[a] worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361.

*Assignment of Errors One and Three*

Mr. Chimento claims that the WCJ erred in finding that he failed to carry his burden of proof to show that he received an electrical shock which precipitated his heart attack and fall from a ten foot ladder, causing alleged injuries to his head and neck. We do not agree and find that the record more than adequately supports the WCJ's conclusion that Mr. Chimento did not receive an electrical shock, but suffered a heart attack due to severe coronary artery disease, which caused his fall and the resulting alleged injuries to his head and neck.

The WCJ in its reasons for ruling referenced affidavits from KDM employees that were submitted in support of KDM and Standards' motion for summary judgment which indicated "that at the location Mr. Chimento was working which was the ceiling area, that this area in the ceiling he was working was not electrified and all the electricity to that area had been cut off." Mr. Chimento argues that this was improper as the affidavits were not offered into evidence at trial on the merits. However, as discussed below, the testimony and evidence submitted at trial more than adequately support the WCJ's conclusion that the conduit pipe Mr. Chimento was working on at the time of the accident did not contain any wires and was not electrified.

*Testimony of Randall Scott Lemons*

Randall Scott Lemons is the owner of a company that provides environmental and safety services. He testified at trial as an expert in the area of OSHA regulations based on his certification by the Department of Labor to teach OSHA safety. Part of his business operation is to conduct inspections on behalf of clients after an accident on a job site, determine if an OSHA investigator should be informed, and then render a report.

6

On September 25, 2012, at approximately 10:44 a.m., Mr. Lemons was informed of Mr. Chimento's accident at the Mid-South Occupational Plant. Radcliff Construction (Radcliff), the general contractor, requested that Mr. Lemons investigate and he arrived at the scene at approximately 11:30 a.m. Mr. Lemons' mission for Ratcliff was to determine if OSHA should be called to investigate the accident.

When Mr. Lemons arrived at the scene, Mr. Chimento had just been taken to the hospital by Acadian Ambulance. Due to the blood in the area, Mr. Lemons did not climb the ladder to check the ceiling area where Mr. Chimento had been working. Mr. Lemons was directed to Brandon Wynn, a former work release inmate who had completed his sentence and was working full time for KDM as a beginning electrician, a position above an apprentice but not yet a full time electrician. Mr. Wynn was working with Mr. Chimento and was the closest individual to the ladder at the time of the accident.

According to Mr. Lemons' trial testimony, "I just wrote down, what I was told," by Mr. Wynn which is stated below in answer to cross examination by counsel for KDM:

> Q All right. And so, that part you wrote down here is, "employee was on ladder and received electric shock." Okay. And then it says, "employee did not initially fall, but sat on top of ladder." That's correct?
>
> A That's correct.
>
> Q Employee said he could not see and passed out?
>
> A. That's correct.
>
> Q When employee passed out he fell approximately 10 feet from the ladder on to the side of the banister then to the concrete floor?
>
> A That's correct.

7

Q. Mr. Wynn gave him aide. So in your report the employee told Mr. Wynn that he could not see, correct?

A That's correct.

Q There's nowhere in your report where it says that the employee told Mr. Wynn that he received an electric shock is there?

A No.

Mr. Lemons further testified that he did not question Mr. Wynn about "how he went about determining that this employee had been subject to an electric shock."[1] Mr. Lemons then observed and photographed the scene, which had not been disturbed since the accident occurred. He photographed the round recessed ceiling lights which were illuminated. He indicated he was unsure if he met with Steve Martin, vice president of KDM, on the day of the accident, because it was a long time ago, but Mr. Martin was at the meeting held the next day when the OSHA inspection occurred.

Mr. Lemons testified that he was not an accident investigator. He had never qualified as an expert or testified in court as an accident investigator or rendered any conclusions about "whether a person was or was not subject to electric shock." His only involvement in the accident was to determine if OSHA should be involved, and in this case, he determined that OSHA should be notified.

After Mr. Lemons was qualified as an expert in the area of OSHA regulations, he gave his opinion on the OSHA investigation. He testified when questioned by counsel for KDM as follows:

Q Okay. Now if an employee OSHA comes in and does an investigation and if they find that that employee was exposed to an

---

[1] The WCJ provisionally admitted Mr. Lemons' report over the objection of KDM. However, the WCJ did not allow Mr. Lemons to state his opinion about whether or not Mr. Chimento has received an electrical shock, as that was beyond his expertise.

electric shock hazard and that it caused him to have a myocardial infarction or heart attack, that it caused him to fall off a ladder, sustain injury would that be sanctionable where they could issue some kind of sanctions or fines against KDM?

A Yes.

Q Okay, and you were aware that someone after you advised your client to bring OSHA in someone from OSHA came out and conducted an investigation?

A Yes.

Q Did you conduct any follow up at any time to determine if OSHA had in fact issued any types of fines or sanctions against KDM?

A Well on that aspect, what I'd like to elaborate a little bit. Once I finish with my initial investigation, it was basically on to KDM. OSHA came in I was aware that they came in because they had to come in to make sure, we had shut the job site down. And they had to come in and look at everything they told me to leave everything the way it was, don't touch anything. And then I went back and checked eventually because, if you want to look at it, I don't know if we can put that Exhibit in there. But the inspection detail from OSHA I wanted to get an update on where we were at and it shows that case had been closed. It didn't show any type of violations or monetary fines or anything like that.

Mr. Lemons then explained that there is a Department of Labor website, which is part of the public record, that contains records of all companies and the results of any OSHA investigations conducted after an alleged work place incident involving that company. The inspection detail from OSHA admitted into evidence at trial indicated the OSHA investigation was opened on September 26, 2012, and closed on November 16, 2012, without any finding of sanctions.

Mr. Lemons further testified:

And if there was a finding of some type of electrical hazard, that led to this injury, would you just see closed there or would you see something different?

. . . .

9

A  You'd see something different.

Q  What would you see?

A  You'd see, it'll list the code of federal regulations that was violated, it might be say lock out tag out and show what was affected in the statute and the fine.

Q  Okay, so again with your knowledge of OSHA compliance requirements if there was an electrical shock that it had been determined by OSHA to have caused this accident, there would have been some violation of a particular federal regulation, code of federal regulation with the fine.  And you'd be able to find that on this computer?

A  Yes.  It could have been several.

Q  But the fact that it's closed indicates to you that there was no…

A  The case is closed there's nothing, no finding of any…

Q  [T]here was no finding any electrical safety violation there?

A  Right, no finding of anything that would cause a violation.  OSHA also came the next day to give, they wouldn't open the site back up if it wasn't safe to work.

Q  Other than Mr. Wynn's statement are you aware of there being any other evidence that would indicate that this man was shocked?

A  No.

Mr. Lemons' report indicated that the OSHA inspector identified as "Robin" also conducted a voltage test at the incident site the day after the accident.  He stated, "[i]n Robin's opinion was no power."

***Testimony of Steven Matthew Martin***

Steven Matthew Martin, Vice- President of KDM, also testified at trial.  Mr. Martin came to the scene after the accident and was aware of the statement made by Brandon Wynn to Mr. Lemons that Mr. Chimento had allegedly received an electrical shock.  Upon his arrival at the scene, and shortly after Mr. Chimento was transported to the hospital, Mr. Martin instructed Travis Brazil, Mr. Wynn's

10

immediate supervisor, to climb up the ladder with a voltage meter to test the circuit and make sure the electricity to the area was not on.  Mr. Wynn and a supervisor from Radcliff, the general contractor, were also present when Mr. Brazil checked the area where Mr. Chimento had been working prior to the accident and confirmed there was no electricity to the area.

Mr. Wynn was required to make an accident report by KDM as part of its policy and procedures.  Although he had initially told Mr. Lemons that he thought Mr. Chimento had received a shock, after witnessing the testing of the area for voltage, he retracted his statement made to Mr. Lemons shortly after the incident that Mr. Chimento had received an electrical shock while working on the ceiling while on the ladder.

Mr. Martin also confirmed when questioned by the WCJ that the area where Mr. Chimento was working was new construction and involved the installation of fluorescent lighting between two air conditioner vents.  The other florescent light in the area was not illuminated, as the electricity had been turned off on that circuit.  The round lighting fixtures which appear to be lighted in the photographs of the area were also discussed with the WCJ.  These lights were identified as recessed lighting, and Mr. Martin testified that they were on a different circuit from the florescent fixtures where Mr. Chimento was working, which had no electrical power at the time of the accident.

### Mr. Chimento's Deposition Testimony

Mr. Chimento did not testify at the trial due to an error in the paperwork that would have provided him the opportunity to appear.[2]  Instead, all parties agreed to

---

[2]The WCJ had issued a court order for Mr. Chimento to appear at the hearing, but due to an error made by counsel for claimant, the wrong DOC was served with the order for transport.

11

allow the submission of Mr. Chimento's two depositions in lieu of trial testimony. The first deposition was taken on April 17, 2014, and the second taken on February 8, 2016.

In the first deposition, taken in connection with this workers' compensation case, Mr. Chimento testified that he had no memory of the accident. He stated:

> Q. Now, do you remember anything about the accident itself, what happened to you on that day?
>
> A. I know what people told me.
>
> Q. We, I'm trying to find you, first of all, what you have a specific recollection of. That's all gone now?
>
> A. The only thing I know is what I was informed had happened.

However in the second deposition on February 8, 2016, Mr. Chimento testified that he remembers getting "hit in [his] hand with some electricity." However, later in his deposition when he was questioned about what he was doing at the time of the incident, he testified "I wasn't pulling pipe, I was putting pipe in." Mr. Martin testified at trial that "[p]ipe is conduit." Mr. Chimento's deposition testimony also indicated that despite his counsel's assertions that wires were in the pipe, he stated "they [the wires] were never pulled in at the time I was there."

When Mr. Martin was questioned about the testimony of Mr. Chimento, he confirmed that there were no electrical wires in the conduit that Mr. Chimento was installing:

> Q And so he's putting conduit up above these acoustic tiles?
>
> A Yes, sir.
>
> Q That don't have any wires in them yet, right?
>
> A That's correct.

12

Mr. Chimento's testimony alone, as stated in his depositions, fails to meet the two required elements necessary to meet his burden of proof required by the jurisprudence articulated in *Bruno*, "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno*, 593 So.2d at 361.

The WCJ, in its reasons for ruling, made a credibility determination and found that the testimony of Mr. Lemons and Mr. Martin controverted the evidence and statements submitted in support of Mr. Chimento's claim that he received an electric shock that caused his heart attack. The WCJ found in its oral reasons for ruling:

> I find the testimony of Mr. Lemons and Mr. Martin to be much more credible than the assertions made by Mr. Chimento, when a review of the medical records indicate that there's no indication of any electric shock except for the purported statement of Mr. Wynn. But he did, Mr. Wynn himself, did change his own statement, and possible records from Acadian Ambulance that indicated a possible electric shock. And then there are photographs introduced into evidence of Mr. Chimento, where Mr. Chimento alleges he has some burn injuries on his hands, but Mr. Chimento is a ley [sic] person and there's no medical corroboration, particularly from Dr. Haj Murad in his deposition, that Mr. Chimento had any burn injuries on his hands or anywhere else on his body as a result of being electrocuted on the date in question.

We therefore find that the record more than amply supports the WCJ's ruling that Mr. Chimento failed to carry his burden of proof that an electric shock caused his heart attack, subsequent fall from the ladder, and alleged injuries to his head and neck.

*Assignment of Error Two*

Mr. Chimento claims the WCJ erred when it denied the addition of two witnesses, Jake Chimento, III, and Keri Chimento Kelley, who are the adult

13

children of Mr. Chimento, as well as the expert report of Dr. Glenn Kelly. The WCJ found that this case was approximately four years old at the time of trial. Mr. Chimento had tried unsuccessfully to stay the trial while he was incarcerated, but the WCJ denied the motion to stay. Writs were denied by a panel of this court in a ruling dated January 26, 2016.[3]

Therefore, Mr. Chimento knew from that time forward that the WCJ intended to proceed with trial, which was fixed for August 4, 2016. Several scheduling orders had been issued by the WCJ during the pendency of these proceedings, and each required that all pre-trial statements and witness lists be submitted to the WCJ and opposing counsel thirty days before trial. The WCJ and opposing counsel received Mr. Chimento's witness list **three days before trial,** which listed for the first time Mr. Chimento's adult children, Mr. Chimento, III, and Ms. Kelley. Although the WCJ and opposing counsel also received KDM's witness list three days before trial, the witness list of KDM had no new witnesses listed. Mr. Chimento claimed that to exclude the two new witnesses was unfair as KDM had possible notice from subpoenas issued to the new witnesses and therefore was not surprised by their addition. The WCJ sustained KDM's objection stating the following, "That's why there's a Court Order. That's what Court orders are all about. I need pretrial statements 30 days before trial, not three days before trial, not the day of trial, that avoids all the problems we ran into this morning."

The WCJ further excluded "an affidavit" from a Cardiologist, Mr. Glenn P. Kelly, based on objection of counsel for KDM that he did not receive the document until the day before trial. The document was also not submitted to the WCJ until

---

[3]*Chimento v. KDM Electric of Alexandria*, 15-1200. (La.App. 3 Cir. 1/26/17).

the day before trial, and was not actually an affidavit, but a June 10, 2016 letter to counsel for Mr. Chimento from Dr. Kelly. The doctor does not say he has ever examined Mr. Chimento and further states "based on our discussion, I render the following opinion."

In excluding the document, the WCJ stated, "I'll sustain the objection, if this is offered as expert testimony, there is no way I'll have the ability to judge the qualifications or whoever this Kelly individual is to satisfy my own self as a court." The WCJ then denied Mr. Chimento's request to submit the doctor's curriculum vitae. Both the testimony of the two witnesses and Dr. Kelly's June 10, 2016 letter were proffered for the record on appeal.

A panel of our sister circuit in *Vernon v. Wade Correctional Inst.*, 26,053, p. 5 (La.App. 2 Cir. 8/19/94), 642 So.2d 684, 688, discussed the application of La.Code Civ.P. art. 1551 which "gives a court wide discretion to provide for implementation of a pretrial order and to insure that the terms of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case." Based on the record before us we find the WCJ did not abuse his discretion in sustaining KDM's objections to the witnesses and document untimely disclosed as per the WCJ's pretrial order and find assignment of error two without merit.

### Assignment of Errors Four, Five, and Six

Mr. Chimento argues that the WCJ erred in failing to award him any medical expenses or indemnity benefits. As previously stated, the WCJ found that Mr. Chimento failed to establish by a preponderance of evidence that he was electrocuted, which resulted in a heart attack, subsequent fall from a ladder, and alleged injuries to his head and neck.

The WCJ further found in its reasons for ruling:

[T]here's no evidence in the record anywhere that he has any disability from anything that happened on that day, particularly any injuries to his head in the fall from the ladder; moreover, he's incarcerated. If there were such evidence he would not be entitled to any indemnity benefits and he's not entitled to any medical expenses. There were no medical bills introduced into evidence, say, for a possible bill from Neurology and Sleep center Dr. Zeibo, but there's no indication in those medical records that anything there had to do with any incidents that occurred on September 25th of 2012 in particular, since there's been a lack of evidence establishing any electrocution. There are Kurby [Kirby] Pharmacy bills, but all of those dates of services there predate the incident. There was introduced into evidence a medicaid lien of $15,524.13 for his time, initially, at Cabrini Hospital. Of course, having found that he failed to prove by a preponderance of the evidence that he had an electrocution injury, these bills are not recoverable.

In support of its reasons, the WCJ properly cited the supreme court case of

*Benoit v. Turner Indus. Group, L.L.C.*, 11-1130 (La. 1/24/12), 85 So.3d 629. The

Louisiana Supreme Court in *Benoit* discussed both medical expenses paid and

written off by Medicaid. In the case of medical expenses paid by Medicaid, the

supreme court provided:

Reading the statute as a whole, it is clear that under La.R.S. 23:1212(A) [4] the payment of medical expenses by Medicaid extinguishes any claim for the employee against the employer for those expenses. La.R.S. 23 1212(B) [5] carves out a narrow exception, whereby the state is granted a right to recover these expenses from the employer.

_____

[4]Louisiana Revised Statutes 23:1212(A) provides (emphasis added):

Except as provided in Subsection B, payment by any person or entity, **other than a direct payment** by the employee, a relative or friend of the employee, or **by Medicaid** or other state medical assistance programs of medical expenses that are owed under this Chapter, **shall extinguish the claim against the employer or insurer for those medical expenses**.

[5]Louisiana Revised Statutes 23:1212(B) provides (emphasis added), "Payments by Medicaid or other state medical assistance programs **shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state** against the employer or insurer."

16

*Id.* at 632.

The *Benoit* Court also held that medical expenses written off by Medicaid were also not recoverable by an employee against an employer and reversed the written off amount of $422,043.59 previously awarded by the WCJ in that case stating:

> Medicaid is a free medical service, and no consideration is given by a patient to obtain Medicaid benefits. As a result, claimant would receive an improper windfall if he was allowed to recover for medical expenses which have been reduced by health care providers as a result of their contractual arrangements with Medicaid. Such double recovery of damages is not permitted under Louisiana law. See *Gagnard v. Baldridge*, 612 So.2d 732 (La.1993) ("Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana law unless expressly provided for by statute").

*Id.* at 635.

In this case, the WCJ noted that there was no actual bill from the hospital in the record, but there was an indication of medical payment by Medicaid while Mr. Chimento was in the hospital, including the bill from Acadian Ambulance. The WCJ also found, on the last page of the bill paid by Medicaid, that "services had been provided under Louisiana's Medicaid program, and payable pursuit [sic] to that program, so then again, as well under the *Benoit* case, there could never be a recovery for any benefits, any medical expenses paid."

Accordingly, the WCJ concluded, "This would absolve KDM Electric from the responsibilities for paying any sort of medical bill that may be associated with any head injury sustained by Mr. Chimento from his fall off the ladder on September 25, 2012." We agree and find the WCJ correctly dismissed all claims made by Mr. Jake Chimento with prejudice and at his costs.

17

*Assignment of Error Seven*

Counsel for Mr. Chimento assigns as error the WCJ's ruling that the submission of a request for attorney fees was untimely and argues that La.Code Civ.P. art 2088, the divesting of jurisdiction of a trial court, or in this case the WCJ, does not apply to workers' compensation cases. Mr. Chimento argues that the request for attorney fees was submitted before final judgment, was signed, and was therefore timely.

Louisiana Revised Statute 23:1201(F) governs the award of attorney fees in a workers' compensation case. Louisiana Revised Statute 23:1202(F)(2) further provides, "This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." The WCJ dismissed all claims made by Mr. Chimento, and therefore no attorney fees award is recoverable. Accordingly, Mr. Chimento's assignment of error seven is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the Workers' Compensation Judge dated November 9, 2016, is affirmed in its entirety, dismissing with prejudice and at plaintiff's sole cost all claims made by Jake Chimento against KDM Electric of Alexandria, LLC, and its insurer The Standard Fire Insurance Company. All costs of this appeal are assessed to the plaintiff, Jake Chimento.

**AFFIRMED.**