# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-606

**CHRISTUS HEALTH SOUTHWEST LOUISIANA D/B/A CHRISTUS ST. PATRICK HOSPITAL**

**VERSUS**

**ALL ABOUT YOU HOME HEALTHCARE, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 03
PARISH OF CALCASIEU, NO. 16-04524
DIANNE MARIE MAYO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED AS AMENDED.**

Thomas Allen Filo
Cox, Cox, Filo, Camel & Wilson, L.L.C.
723 Broad Street
Lake Charles, LA 70601
Telephone: (337) 436-6611
COUNSEL FOR:
    Plaintiff/Appellee - Christus Health Southwest Louisiana d/b/a Christus
    St. Patrick Hospital

**Kevin Andrew Marks**
**Melchiode, Marks, King, LLC**
**639 Loyola Avenue - Suite 2550**
**New Orleans, LA 70113**
**Telephone:  (504) 336-2880**
**COUNSEL FOR:**
> **Defendants/Appellants - Bridgefield Casualty Insurance Company and All About You Home Healthcare, Inc.**

**THIBODEAUX, Chief Judge.**

In this workers' compensation dispute, the claimant, Christus Health Southwest Louisiana d/b/a Christus St. Patrick Hospital (Christus), filed a 1008, Disputed Claim for Compensation in the Office of Workers' Compensation (disputed claim) against the employer, All About You Home Healthcare, Inc., and its insurer, Bridgefield Casualty Insurance Company (Defendants), alleging the nonpayment and underpayment of medical charges. Related to this matter is a motion filed by a class of Louisiana hospitals and ambulatory surgery centers, of which Christus is a member, that sought to enforce a class action settlement agreement between the class and FairPay Solutions, Inc. (FairPay), the Defendants' billing review service (settlement agreement).[1] After the trial court granted the motion in favor of the class (enforcement judgment), FairPay appealed to this court.[2] Thereafter, the Defendants filed exceptions of res judicata, lack of subject matter jurisdiction, and nonjoinder of an indispensible party, all of which the WCJ denied. The workers' compensation judge (WCJ) then rendered judgment in favor of Christus on the merits, awarding Christus the unpaid and underpaid amounts due under our Louisiana Workers' Compensation Act (LWCA) as regulated by the Louisiana Reimbursement Schedule (fee schedule), together with penalties and attorney fees. The Defendants now appeal that judgment, and Christus has answered the appeal, seeking an increase in attorney fees for work done on appeal. Finding no error or abuse of discretion in the WCJ's judgment, we affirm the

---

[1]On appeal, this court affirmed the trial court's approval of the settlement agreement. *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc*., 13-17 (La.App. 3 Cir. 7/3/13), 118 So.3d 1269.

[2]This court affirmed the enforcement judgment on appeal in *Opelousas General Hospital Authority v. FairPay Solutions, Inc.*, 17-42 (La.App. 3 Cir. 6/13/17), __ So.3d __, *writs denied*, 17-1319 (La. 9/15/17), 225 So.3d 480, 17-1223 (La. 10/27/17), __ So.3d __.

judgment and award Christus $5,000.00 in fees for work necessitated by this appeal.

I.

## ISSUES

The Defendants ask this court to decide:

(1) whether the WCJ legally erred in refusing to recognize the prior confected settlement agreement provisions, which dictate the payment of this medical bill that, if paid according to Christus's claim, was overpaid, and nevertheless held that the Defendants underpaid the medical bill pursuant to the fee schedule, which had no application to the initial determination in this case;

(2) whether it was legal error to find that payment of a medical bill, which was more than Christus contends it was entitled to under the settlement agreement, permitted the imposition of penalties and attorney fees despite no provision in the settlement agreement for penalties and when these defendants acted reasonably;

(3) whether it was legal error to find the Defendants solidarily liable with a non-party for penalties and attorney fees absent a finding of fault on the employer and insurer when the statute clearly states that penalties are only imposed based upon a party's fault;

(4) whether the WCJ legally erred in not dismissing the claim pursuant to the exception of nonjoinder of indispensible party as a necessary party to the litigation, FairPay, was not and could not be made a party to the suit;

(5) whether the WCJ legally erred in denying the Defendants' exception of lack of subject matter jurisdiction as it involves the interpretation of a contract and not a claim arising under the LWCA as was previously determined by this circuit in an earlier companion case, *Opelousas General Hospital Authority*, 118 So.3d 1269; and

(6)     whether the WCJ legally erred in denying the Defendants' exception of res judicata as the claim concerns a matter previously compromised between the same parties in a prior lawsuit?

II.

## FACTS AND PROCEDURAL HISTORY

This matter involves the unpaid/underpaid charges for treatment rendered by Christus to Brandi Vital on July 17, 2013, for injuries sustained in an accident that occurred in the course and scope of her employment. Christus submitted a bill to the Defendants for nine separate charges. The three charges at issue herein were coded and billed as follows:

(1)     J2360 orphenadrine injection  $198.00

(2)     J1885 ketorolac tromethamine  $8.40

(3)     70450 CT Scan/Brain  $2,076.00.

The Defendants, in turn, submitted the bill to FairPay. Pursuant to FairPay's recommendations, the Defendants did not reimburse Christus for the J-coded prescriptions at all and only reimbursed $656.13 for the CT scan. The remaining six charges were reimbursed at either the fee schedule rate (90% of billed charges)[3] or at the rate specified by the Future FairPay Pricing Methodology (FFPM) contained in the settlement agreement reached in the class action brought against FairPay.

---

[3]Louisiana Administrative Code tit. 40, § 2507(A) provides:

A.     Outpatient hospital and ambulatory surgery services will be reimbursed at covered charges less a 10 percent discount. The formula for calculating payment amount is:

(BILLED CHARGES) - (NONCOVERED CHARGES) =
COVERED CHARGES x .90 = PAYMENT AMOUNT

3

In that action, the class sued FairPay under the Louisiana Racketeering Act, asserting that FairPay's recommendations to workers' compensation insurance providers were fraudulently low. Although FairPay denied the allegations, the action was eventually settled on August 17, 2012. Section 11 of the settlement agreement referenced the FFPM, which specifically detailed how FairPay would review and reprice future medical bills submitted by member providers in workers' compensation claims for an agreed-upon target reimbursement rate of 72%:

> 11.1 In addition to the consideration paid in Section 10 above, the FairPay Settling Parties have agreed to a new Future FairPay Pricing Methodology to be utilized in connection with FairPay's recommendations for payment of Louisiana hospital and ambulatory surgery center outpatient workers' compensation medical bills.

> 11.2 The new methodology will be considered FairPay's proprietary methodology and will be kept confidential and under seal. . . .

> 11.3 The Future FairPay Pricing Methodology is designed to reflect the mean of the usual and customary charge as set forth in LSA-R.S. 23:1203(B) and the Class and each Class Member agrees, that for purposes of this settlement only, the Future FairPay Pricing Methodology does yield the mean of the usual and customary charges for workers' compensation outpatient and ambulatory surgery center medical bills in the Class Member's geographic area and satisfies the obligation of the employer to pay for medical treatment under the Louisiana Workers' Compensation Act.

> 11.4 The Future FairPay Pricing Methodology is anticipated to result in an excepted average reimbursement to the Class of approximately 72% of billed charges for all bills processed by FairPay.

Paragraph 11.5 of the settlement agreement explicitly provided that if either FairPay or its clients did not correctly utilize the FFPM, then neither would be provided the protections of the settlement agreement:

> It is expressly agreed that neither FairPay nor its clients nor other parties directly or indirectly contractually entitled to utilize FairPay's payment recommendations are required to utilize the Future FairPay Pricing Methodology to reprice or pay any bills in the future, provided, however, that none of the protections afforded by this settlement and Agreement (including but not limited to the Release from Liability for Future Episodes) will apply to any bills *not* re-priced under the approved Future FairPay Pricing Methodology.

Paragraph 11.7 then set forth the dispute resolution procedure:

> Each Class Member agrees that, should a dispute arise concerning the proper application of the Future FairPay Pricing Methodology, the Class Member must first submit the dispute directly to FairPay for reconsideration of the recommended reduction. FairPay will have 30 days (the "Initial Reconsideration Period") from presentation to resolve the dispute and/or make any corrections to the recommended reduction and the Class Member is prohibited from taking any further action during the Initial Reconsideration Period. If at the end of the Initial Reconsideration Period, a dispute over the Future FairPay Pricing Methodology still exists, the Class Member agrees to submit to non-binding mediation if, but only if, requested by FairPay. Any such mediation shall be conducted within 30 days of the end of the Initial Reconsideration Period at a cost to be born equally by FairPay and the Class Member. At the expiration of the 30 day Initial Reconsideration Period (or after mediation if required by FairPay) the dispute has still not been resolved, then, and only then, will the Class Member have the option of pursing a claim for underpayment in the Louisiana Office of Workers' Compensation. If the Class Member does pursue a claim in the Louisiana Office of Workers' Compensation or proceeding in any other venue on the basis that the payment was not consistent with the Future FairPay Pricing Methodology, then the prevailing party shall be entitled to an award of costs and reasonable attorneys' fees.

In 2013, counsel for the class brought to FairPay's attention numerous complaints from class members that its repriced bills were being reimbursed at rates below the targeted 72%. Of primary concern were the nonpayment and underpayment of drug and radiology charges, similar to the charges at issue herein.

On July 15, 2016, the class filed its Motion to Enforce Settlement Agreement based on its belief that FairPay had consistently misapplied the agreed-upon FFPM. That same day, Christus filed this disputed claim, alleging the Defendants' "[u]nderpayment &/or late payment of medical bill" and seeking "penalties and attorney fees for arbitrary and capricious handling of this claim." In their answer, the Defendants contended that the amount paid to Christus was "reasonable, fair and sufficient payment under the Louisiana Workers' Compensation Law as regulated by the Fee Schedule." Alternatively, the Defendants contended that "the amount paid was in accordance with the agreement provider entered into in" the class action settlement.

After hearing the motion to enforce, the trial court found that FairPay admittedly performed Medicare edits under paragraph 1 of the FFPM that were not contemplated or intended by the FFPM or the settlement agreement. The trial court granted the motion to enforce in favor of the class and signed the enforcement judgment on November 3, 2016. Therein, the trial court ordered FairPay:

1.  Discontinue applying edits under Paragraph 1 of the [FFPM] for correctly coded bills and apply the formula contained in Paragraph 3 for all services . . . or, in the alternative,

2.  Indicate on the explanations of review (EOR's) that the bill is **not** being repriced utilizing the [FFPM].

6

In light of FairPay's appeal of the enforcement judgment, the Defendants sought a continuance/stay of the trial herein on January 13, 2017, arguing that the exact issue presented in this matter—the proper application of the FFPM—was currently pending before this court in the appeal.[4] The WCJ denied the motion on January 23, 2017. Finding no abuse of discretion, this court denied writ. *Christus Health Sw. La. v. All About You Home Healthcare, Inc.*, 17-57 (La.App. 3 Cir. 2/7/17) (unpublished). Thereafter, the Defendants filed their exceptions of res judicata and lack of subject matter jurisdiction, in which they argued this matter must be dismissed because (1) "it concerns a compromise between the parties in a prior matter" and Christus "has not alleged grounds to set aside the compromise in its pleadings"; and (2) "[t]his dispute concerns the enforcement of the settlement agreement and not a claim under the Louisiana Workers' Compensation Act, and accordingly, there is no subject matter jurisdiction for a breach of contract claim." The WCJ denied both exceptions on February 8, 2017. Trial on the merits commenced that day.

After trial but prior to judgment, the Defendants filed their exception of nonjoinder of an indispensable party, FairPay. The WCJ denied the exception and issued her final judgment on the merits. In that judgment, the WCJ ordered the Defendants to pay Christus "$1,398.03, together with legal interest, which represents the total amount of underpayments/discounts taken on Claimant's medical bill for services rendered to Brandi Vital on July 17, 2013[.]" The judgment further ordered the Defendants to pay penalties in the amount of $2,000.00 and awarded attorney fees to Christus in the amount of $14,840.00.

---

[4]As previously noted, this court subsequently affirmed the enforcement judgment, and the supreme court recently denied writ. *See supra* note 2.

In her oral reasons, the WCJ first recited the FFPM stipulation in the settlement agreement and noted that Christus was availing itself of its right to proceed under the LWCA pursuant to paragraph 11.7 of the agreement. The WCJ then addressed the issue of "[w]hether or not the bills in question were paid in accordance with the Louisiana Workers' Compensation fee schedule." After finding that Christus was entitled to costs, penalties, and attorney fees under the terms of the settlement agreement and because the Defendants admittedly did not controvert the claim, the WCJ concluded that the three charges "were not properly paid under the Louisiana Workers' Compensation fee schedule at 90 percent." It also recited the deposition testimony of FairPay's representative, Amelia Vaughan, wherein she conceded that more information was needed to determine whether or not the three bills were paid correctly under the recent enforcement judgment. Finally, in denying the exception of nonjoinder, the WCJ found that "FairPay provides a service and it will not be paying and are [sic] not liable for any monies if a judgment is rendered against the employer. . . . FairPay can be equated to a third party administrator that cannot be sued in workers' compensation."

III.

## STANDARDS OF REVIEW

In reviewing a WCJ's findings of fact, appellate courts apply the manifest error or clearly wrong standard of review. *Dean v. Southmark Constr.*, 03-1051 (La. 7/6/04), 879 So.2d 112. When an error of law is alleged on appeal, the appellate court must determine whether the WCJ's ruling was legally correct. *Edwards v. Ford Motor Co.*, 06-101 (La.App. 3 Cir. 6/21/06), 934 So.2d 221, *writ denied*, 06-1847 (La. 10/27/06), 939 So.2d 1282. If the appellate court's review

8

reveals "a reversible error of law[,]" it must conduct a de novo review of "the entire record and render a judgment on the merits" if possible. *Bridges v. Nelson Indus. Steam Co.*, 15-1439, p. 4 (La. 5/3/16), 190 So.3d 276, 279.

An appellate court reviews the WCJ's decision to award penalties and attorney fees using the manifest error or clearly wrong standard of review. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843. An award of attorney fees and penalties will not be reversed, however, absent an abuse of discretion. *Kinard v. New Iberia Wastewater Treatment Facility*, 12-1393 (La.App. 3 Cir. 4/3/13), 116 So.3d 5.

IV.

## LAW AND DISCUSSION

At the outset, we note that this matter was filed in workers' compensation as a disputed claim for benefits pursuant to paragraph 11.7 of the settlement agreement, wherein the parties outlined the following steps available to class members to dispute the proper application of the FFPM:

(1) "the Class Member must first submit the dispute directly to FairPay for reconsideration";

(2) "FairPay will have 30 days (the 'Initial Reconsideration Period') to resolve the dispute and/or make any corrections";

(3) "If at the end of the Initial Reconsideration Period, a dispute over the [FFPM] still exists," the class member has to submit to "mediation if, but only if, requested by FairPay"; and

(4) "At the expiration of the 30 day Initial Reconsideration Period . . . the dispute has still not been resolved, then, and only then, will the Class Member have the option of pursing a claim for underpayment in the Louisiana Office of Workers' Compensation."

9

It is not disputed that: (1) Christus first presented the dispute to FairPay; (2) FairPay did not request mediation; and (3) the dispute had not been resolved during the initial thirty-day reconsideration period. Further, it was only after the expiration of the Initial Reconsideration Period that Christus filed the instant claim in the OWC for the nonpayment and underpayment of the disputed charges. Inasmuch as the WCJ recognized that Christus was exercising its right under this paragraph of the settlement agreement in bringing this action, we find no error in the WCJ's application of the agreement and in her acknowledgment that the sole issue properly before her was whether the disputed charges were paid in accordance with the Louisiana's compensation fee schedule.

Nevertheless, through their exceptions and assignments of error, the Defendants attempt to bring this matter within the parameters of the settlement agreement and make the issue herein about the proper application of the FFPM. However, pursuant to the plain language of the settlement agreement, this matter now properly sounds in workers' compensation, and we must look to the LWCA to resolve this dispute.

An employer's obligation to furnish medical expenses is governed by La.R.S. 23:1203, which provides that "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." La.R.S. 23:1203(A). The employer's obligation under this section is limited, however, by La.R.S. 23:1203(B), which provides, in pertinent part:

> The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and

supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.

"Should a dispute arise between a health care provider and the employee, employer, or workers' compensation insurer, either party may submit the dispute to the office in the same manner and subject to the same procedures as established for dispute resolution of claims for workers' compensation benefits." La.R.S. 23:1034.2(F)(1).

The penalties for failure to make timely payments of medical expenses are set forth in La.R.S. 23:1201(F), which provides, in relevant part:

Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.

11

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

(3) Except as provided in Paragraph (4) of this Subsection, any additional compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.

(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. This Subsection shall not be construed to provide for recovery of more than one penalty or attorney fee.

Pursuant to this provision, both penalties and attorney fees are recoverable when an employer fails to pay medical benefits timely, unless the claims are reasonably controverted.

In *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, the supreme court defined the term "reasonably controverted:"

The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

The duty of an employer to make a reasonable effort to investigate a claim is continuous. *Penn v. Wal-Mart Stores, Inc.*, 93-1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, *writ denied*, 94-1835 (La. 10/28/94), 644 So.2d 651.

The uncontroverted evidence herein reveals that, pursuant to the fee schedule formula, the amount of the reimbursement due to Christus equaled $2,054.16, or 90% of $2,282.40. It is undisputed that the three charges were not reimbursed at the fee schedule rate.

In their answer, the Defendants challenged that the invoiced amounts were excessive, unreasonable, and beyond the mean of the usual and customary charges allowed by the fee schedule. Along these lines, they also raised, as a defense, the applicability of several provisions of the settlement agreement, namely paragraph 11.3 in which the class members agreed that the FFPM would "yield the mean of the usual and customary charge for workers' compensation . . . medical bills . . . and satisf[y] the obligations of the employer to pay for medical treatment under the [LWCA]."

Under our supreme court's interpretation of the LWCA, Christus, as a healthcare provider, could legally negotiate a lower rate of payment for its professional fees, and the Defendants, as the employer and insurer, could, in defense, rely on payments made based on that rate as satisfaction for their statutory obligations. *Agilus Health v. Accor Lodging N. Am.*, 10-800 (La. 11/30/10), 52 So.3d 68; *see also*, *Benoit v. Turner Indus. Group., L.L.C.*, 11-1130 (La. 1/24/12), 85 So.3d 629. However, in light of the dispute herein, the Defendants, to succeed on their defense, had to prove that the payments were made in accordance with the settlement agreement and the FFPM in order to discharge their obligations under the LWCA. Rather than establishing compliance with the intended application of

the FFPM—as interpreted by the enforcement judgment affirmed by this court—the uncontested evidence at trial demonstrated that the charges were not repriced pursuant to an approved application of the FFPM. The evidence reveals that FairPay applied the same edits under paragraph 1 of the FFPM to the bill herein that the trial court rejected in the enforcement judgment recited above.

Furthermore, the agreement contained in paragraph 11.3 was explicitly limited in that it was made "for purposes of this settlement only." It also clearly presupposed a proper application of the FFPM, which is evident from a reading of its provisions in conjunction with those set forth in paragraphs 11.5 and 11.7. Under paragraph 11.5, "none of the protections afforded by this Settlement and Agreement (including but not limited to the Release from Liability for Future Episodes) will apply to any bills *not* re-priced under the approved [FFPM]." Given that the bills herein were "*not* re-priced [by FairPay] under the approved [FFPM,]" the Defendants, by the terms of the settlement agreement, cannot now rely on the contractually agreed-upon rate to relieve them of their obligations under the LWCA.

Admittedly, the evidence at trial did demonstrate that the reimbursement made for the CT scan was greater than would be due under an application of the FFPM made in compliance with the enforcement judgment, resulting in what the Defendants categorize as an "overpayment."[5] Regardless though, the Defendants had to either rebut Christus's evidence that all three charges were not properly reimbursed pursuant to the LWCA or prove the charges

---

[5]The Defendants argued that, pursuant to FairPay's recommendation for payment under paragraph 1 of the FFPM, they paid $656.13 for the CT scan. However, under paragraph 3 of the FFPM, Christus should have only received $617.17 for the CT scan. Moreover, the total for all nine charges was $7,334.40. Applying paragraph 1, FairPay recommended, and the Defendants paid, $3,475.36. However, under paragraph 3, the total amount due to Christus would have been $3,371.71.

were repriced by FairPay under the approved FFPM. The Defendants could not do either as the undisputed evidence revealed that (1) FairPay repriced the charges using the very method rejected by the trial court in the enforcement judgment, and (2) the Defendants only reimbursed Christus based on the improperly repriced charges recommended by FairPay, which fell far below the fee schedule rate.

Moreover, the Defendants, through the testimony of their claims adjustor, Clint Dobson, admitted that they did not even investigate, much less controvert, the charges; they merely forwarded any request for reconsideration to their attorney without any further inquiry. Under La.R.S. 23:1201(F)(4), the Defendants' failure to make any effort, much less a reasonable one, to investigate Christus's claims entitles Christus to the recovery of reasonable penalties as well as attorney fees "based upon actual hours worked[,]" documented in the affidavits submitted by Christus's counsel at trial.

Accordingly, we find the WCJ did not err in awarding Christus $1,398.03, the difference between what the Defendants paid ($656.13) and the fee schedule rate ($2,054.16), and in imposing penalties and attorney fees for the Defendants' failure to reasonably investigate or controvert the disputed charges. We further find no abuse of discretion in its award of $2,000.00 in penalties and $14,848.00 in attorney fees.

We likewise affirm the WCJ's rulings on the Defendants' exceptions of nonjoinder, subject matter jurisdiction, and res judicata. Though artfully drafted, every one of these exceptions is based on an application of the settlement agreement and the FFPM to this disputed claim. But a disputed claim for compensation can only be brought (1) against an employer and its insurer in the

15

manner set forth in La.R.S. 23:1032,[6] and (2) in the OWC, which has exclusive jurisdiction over all disputed claims arising under the LWCA, *see* La.R.S. 23:1310.3(F).[7] As the WCJ found, FairPay is a third-party bill reviewer. It is not a proper party defendant in workers' compensation as FairPay owes no obligation to Christus under the LWCA. Moreover, this litigation sounds exclusively in

---

[6]Louisiana Revised Statutes 23:1032 provides, in pertinent part:

> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
>
> (b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
>
> (2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

[7]Louisiana Revised Statutes 23:1310.3(F) provides:

> Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers' compensation insurance coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

16

workers' compensation and does not address or resolve any substantive rights arising under the settlement agreement. Because a party is only deemed indispensible "when that party's presence is absolutely necessary to protect its substantial rights[,]" it logically follows that FairPay is not an indispensible party to this workers' compensation litigation. *Shamieh v. Liquid Transp. Corp.*, 07-1282, pp. 6-7 (La.App. 3 Cir. 1/30/08), 975 So.2d 161, 164-65.

Under the exclusivity provisions of the LWCA, the only arbiter with jurisdiction to hear this disputed claim for compensation is the OWC. Therefore, the proper avenue for redress of Christus's disputed claim for compensation against the employer and its insurer was the OWC, even though the proper avenue for redress of Christus's issues concerning the proper application of the FFPM by FairPay was the district court that retained jurisdiction over the settlement of the civil dispute between the class and FairPay.[8]

Moreover, rather than precluding this claim, paragraph 11.7 of the settlement agreement, recited above, explicitly grants Christus the right to seek redress in the OWC under the circumstances herein, i.e., thirty days after Christus presented its dispute to FairPay when the dispute has not been resolved and

---

[8] In *Opelousas General Hospital Authority*, 118 So.3d at 1274, upon which the Defendants now rely, we found that the LWCA

> does not regulate contracts between bill reviewers and medical care providers. "Mere involvement of workers' compensation issues is insufficient; such disputes may 'relate to' to workers' compensation matters, but they do not 'arise out of' the Act." *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013, p. 9 (La. 12/2/08), 5 So.3d 812, 817. The contract claims resolved in this class action settlement involve a civil dispute between companies that provide bill review services to medical care providers. The district court properly had jurisdiction over this matter.

Unlike the contractual claim therein, the present disputed claim for compensation "arises out of" the LWCA over which the OWC has exclusive jurisdiction.

FairPay has not requested mediation. Neither the settlement agreement nor the judgment approving the settlement bars the litigation of this new, and as yet undecided, disputed claim for compensation against the employer in the OWC, thus rendering the doctrine of res judicata inapplicable herein. Accordingly, we find the Defendants' arguments regarding their exceptions are meritless.

In its answer, Christus seeks additional attorney fees for work done on appeal. "The award of additional attorney fees is warranted when the claimant successfully defends its judgment." *Thomas Medical Group, APMC v. Stine, LLC*, 10-593, p. 5 (La.App. 3 Cir. 12/8/10), 52 So.3d 988, 992. "Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal . . . to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170. Accordingly, we award Christus an additional $5,000.00 for work done on this appeal.

## V.

## CONCLUSION

For these reasons, we find no error or abuse of discretion in the WCJ's judgment awarding Christus $1,398.03 in unpaid/underpaid charges, $2,000.00 in penalties, and $14,840.00 in attorney fees. We further award Christus $5,000.00 in attorney fees for work done on this appeal.

Costs of this appeal are assessed to the Defendants/Appellants.

**AFFIRMED AS AMENDED.**